### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

## EMILY M. SUNDINE'S CASE.

Suffolk.   March 3, 1914.—May 22, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Workmen's Compensation Act.*

Under St. 1911, c. 751, Part III, § 17, and Part V, § 3, as amended by St. 1912, c. 571, § 17, an employee of a contractor, who has agreed to make a part of the clothing to be furnished by a tailor who has obtained insurance under the provisions of the workmen's compensation act, has the same rights against the insurer as if the insurance had been taken out by his own employer.

An injury sustained by a workman employed by the week, when such workman at the noon hour has left the workroom in which he is employed and is on his way to lunch, can be found to have arisen out of and in the course of his employment, it being an incident of such employment to go out for this purpose.

An injury sustained by a workman, who is employed by the week to work in a room leased to his employer in a building owned by the lessor, when the workman on his way to lunch is descending a stairway that is in the control of the owner of the building but which the employer and his employees have the right to use and which is the only means available for going to and from the workman's place of employment, can be found to have arisen out of and in the course of his employment within the meaning of the workmen's compensation act, it being a necessary incident of the workman's employment to use these stairs.

APPEAL from a decree of the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Crosby*, J.  The Industrial Accident Board upon an agreed statement of facts found as follows:

Emily Sundine, the employee, in the employ of one Olsen named below, was injured on November 29, 1912, while coming down a flight of stairs leading from the third floor to the second floor of the building numbered 376 on Washington Street in Boston.  She was coming from the workroom of F. L. Dunne and Company on the fourth floor of the building at about noon.  At the time of the accident she was on her way out to luncheon and was descending to the street, accompanied by another woman.  She fell from the second or third step from the top of the flight of stairs to the bottom and sprained her right ankle.  The stairs were of wood and the treads of the stairs were somewhat worn.  There was no artificial light for these stairs and the upper part of the flight was dark.

This was the only flight of stairs by which the employee could reach or leave the workroom; there was no elevator for her to use, and it was necessary for her to use this flight of stairs in going to and from her work.  The employee contended that the accident was due to the insufficient lighting of these stairs and also to the fact that they were worn down, causing her to fall.

F. L. Dunne and Company on the day of the accident were the lessees of the workroom in which the employee worked on the fourth floor, being sublessees from A. H. Howe and Sons, who were the lessees of the whole building.  The workroom was used exclusively for making clothing for F. L. Dunne and Company, who were tailors and let out their work to different men who were paid a stipulated price per garment, F. L. Dunne and Company furnishing the goods.  One of the men who made clothing for F. L. Dunne and Company in this room was Olsen, and Olsen paid the employee her weekly wages of $12 a week for assisting him in making clothing for F. L. Dunne and Company.  F. L. Dunne and Company were covered by insurance under the workmen's compensation act by the London Guarantee and Accident Company, Limited.  Olsen was not covered by insurance under the act.

The employee was out of work from November 29, 1912, to February 24, 1913, which was the earliest date at which she was

able to go to work. The attending physician's bill for the first two weeks' services was $24.

The decision of the board was as follows:

"We find that it was a necessary incident of her employment to use the flight of stairs upon which she was when she was injured and, therefore, rule that the injury arose out of and in the course of her employment.

"It also appears from the statement of facts that Olsen, for whom the employee was working, was a contractor for F. L. Dunne and Company within the meaning of Part III, § 17, of the workmen's compensation act, and we rule that she is entitled to compensation.

"It was agreed that her average weekly wages were $12. We, therefore, find that she is entitled to compensation at the rate of $6 a week from the fifteenth day after her injury, to wit, from December 13, 1912, to the 23rd day of February, 1913, inclusive, amounting in all to sixty-two dollars and fifty-seven cents, together with her physician's bill for medical services for the first two weeks after the injury, which it was agreed was $24, amounting in all to $86.57."

The judge made a decree in accordance with the decision of the Industrial Accident Board, ordering that the insurer should pay to the employee the total amount of $86.57. The insurer appealed.

*H. S. Avery*, for the insurer.

*R. J. Lane*, for the employee.

SHELDON, J. It is provided by statute (St. 1911, c. 751, Part III, § 17) that "if a subscriber enters into a contract, written or oral, with an independent contractor to do such subscriber's work . . . and the association would, if such work were executed by employees immediately employed by the subscriber, be liable to pay compensation under this act to those employees, the association shall pay to such employees any compensation which would be payable to them under this act" if the independent contractor were a subscriber. By the word "association" is meant the Massachusetts Employees' Insurance Association, Part V, § 2, of the same act; and this insurance company is under the same liability that the association would have been. St. 1912, c. 571, § 17. It follows that the petitioner has the same rights

against this insurance company as if it had directly insured her employer Olsen.

The insurer does not deny this, but it contends that the petitioner's injury did not arise "out of and in the course of" her employment within the meaning of Part II, § 1, of the act first referred to. This is because she was injured at about noon, after she had left the room in which she worked for the purpose of getting a lunch, and upon a flight of stairs which, though affording the only means of going to and from her workroom, was yet not under the control either of Olsen, her employer, or of F. L. Dunne and Company, for whose work Olsen was an independent contractor.

The first contention, that she was not in the employ of Olsen while she was going to lunch, cannot be sustained. Her employment was by the week. It would be too narrow a construction of the contract to say that it was suspended when she went out for this merely temporary purpose and was revived only upon her return to the workroom. It was an incident of her employment to go out for this purpose. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 102. The decisions upon similar questions under the English act are to the same effect. *Blovelt* v. *Sawyer*, [1904] 1 K. B. 271, which went on the ground that the dinner hour, though not paid for, was yet included in the time of employment. *Moore* v. *Manchester Liners*, 3 B. W. C. C. 527, where the House of Lords reversed the decision of the Court of Appeal, reported in [1909] 1 K. B. 417, and held, following the dissenting opinion of Moulton, L. J., that a temporary absence by permission, though apparently of longer duration than would have been likely in the case before us, did not suspend the employment, and that an injury occurring during such a temporary absence arose "out of and in the course of" the employment. *Gane* v. *Norton Hill Colliery Co.* 2 B. W. C. C. 42, and [1909] 2 K. B. 539. *Keenan* v. *Flemington Coal Co.* 40 Sc. L. R. 144. *MacKenzie* v. *Coltness Iron Co.* 41 Sc. L. R. 6.

Nor do we regard it as decisive against the petitioner that she was injured while upon stairs of which neither Olsen nor F. L. Dunne and Company had control, though they and their employees had the right to use them. These stairs were the only means available for going to and from the premises where she

was employed, the means which she practically was invited by Olsen and by F. L. Dunne and Company to use. In this respect, the case resembles *Moore* v. *Manchester Liners, ubi supra;* and that case, decided under the English act before the passage of our statute, must be regarded as of great weight. *McNicol's Case,* 215 Mass. 497, 499. It is true that before the passage of St. 1911, c. 751, the petitioner could not have held her employer for this injury. *Hawkes* v. *Broadwalk Shoe Co.* 207 Mass. 117. But that now is not a circumstance of much importance; for one of the purposes of our recent legislation was to increase the right of employees to be compensated for injuries growing out of their employment.

It was a necessary incident of the employee's employment to use these stairs. We are of opinion that according to the plain and natural meaning of the words an injury that occurred to her while she was so using them arose "out of and in the course of" her employment. The decree of the Superior Court must be affirmed.

*So ordered.*