[Civ. No. 4430. First Appellate District, Division Two.—March 7, 1923.]

CALIFORNIA HIGHWAY COMMISSION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—INJURY ON WAY TO LUNCH— TRANSPORTATION BY FELLOW-EMPLOYEE — RIGHT TO BENEFITS OF ACT.—Applicant's contract of employment not having obligated him to live at the camp maintained by the employer, but he having chosen to do so for his own convenience, and the employer having been under no obligation to furnish him transportation from the place of employment to the camp, but applicant having chosen to ride to camp for lunch during the lunch hour, with a fellow-employee in a machine not owned or controlled by the employer, applicant was not entitled to the benefits of the Workmen's Compensation Act where he was injured when that machine went over an embankment due to some defect in the steering mechanism.

---

1. Injuries received while procuring refreshments as injuries arising out of and in the course of employment, notes, Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; L. R. A. 1916A, 320; L. R. A. 1917D, 120.

[2] ID.—FAILURE TO FURNISH CUSTOMARY TRANSPORTATION—STATU-
TORY LIABILITY OF EMPLOYER NOT ENLARGED.—The fact that the
employer failed to furnish transportation to take applicant to
his lunch, as had been customary, did not enlarge the employer's
liability so as to render it liable under the Workmen's Compen-
sation Act for the injuries received by applicant when the means
of transportation which he adopted, of which the employer had
no knowledge and over which it had no possible control, went
over an embankment due to some defect in the steering mechanism.

PROCEEDING in Certiorari to review an award of the
Industrial Accident Commission. Award annulled.

The facts are stated in the opinion of the court.

Frank J. Creede and John J. Taheny for Petitioner.

A. E. Graupner for Respondents.

LANGDON, P. J.—This matter is before us upon a writ
to review an award of the Industrial Accident Commission
against petitioner, allowing to Harry Maloney $248.70, ac-
crued compensation and $18.52 weekly until termination of
disability, together with reasonable medical expenses, the
amount to be determined later by said commission.

The one question presented is whether or not the finding
of the commission that applicant sustained his injuries ''in
the course of and arising out of his employment'' is sus-
tained by the evidence in the record.

[1] The facts are practically undisputed and are,
broadly, as follows: On January 29, 1922, which was Sun-
day, the applicant, Harry Maloney, was in the employ of
the defendant as a rock-drill operator. He was engaged,
with other employees of the petitioner, in working upon the
highway between Jacumba and Mountain Springs, in the
state of California, at a point on the road about one and
one-half or two miles from Mountain Springs. The appli-
cant and some of the other employees lived at Mountain
Springs, where the petitioner supplied them with tents, but
not with beds nor blankets, and sold them their meals if
they desired to purchase them. Applicant's contract of
employment did not obligate him to live at the camp at
Mountain Springs, but he had chosen to do so for his
own convenience. Some of petitioner's employees lived at

Jacumba, about ten miles distant. Applicant might have done likewise and might have brought his lunch with him each day, but he found the Mountain Springs camp more convenient. While applicant was employed by the petitioner he had always ridden back and forth from the camp to his place of work during his lunch hour in one of his employer's conveyances. Also, he had been transported by his employer to his work in the morning and to camp in the evening, except upon one or two occasions when he had walked from his place of work to the camp because there was no conveyance at hand at the close of the day's work. The road from the place of work to Mountain Springs is downhill all the way. There was no express agreement between applicant and his employer as to transportation to and from the camp, but the truck drivers employed by petitioner understood that it was permissible for the employees to get on any truck that happened to be going to camp and to ride down to camp for lunch. The employees were free from work during the hour between 12 and 1 o'clock so that they might eat their lunch. At 12 o'clock noon on the day of the accident applicant was told by a fellow-employee that the only truck on duty that day had departed for Jacumba at about ten minutes to 12. Applicant was not informed that the truck would not return, but concluded that it could not do so in time to take him to his luncheon and so he started to walk to Mountain Springs for his lunch. After walking a few hundred yards, an automobile belonging to a fellow-employee, and driven by another fellow-employee, who had asked permission of the owner to use the same, caught up with the applicant as he was walking along the road. The driver of the car invited the applicant to get in the automobile and go to camp and applicant and another employee of the petitioner, who was walking with him, stepped into the automobile, which continued toward Mountain Springs. Petitioner had nothing to do with this automobile which the applicant entered, and did not know that it was to be used as a conveyance for its employees and had no opportunity to inspect or right of inspection or control over the same.

Due to some defect in the steering mechanism, the automobile, in rounding a turn in the road, went over the embankment and applicant was very seriously injured.

We do not think that these facts bring the applicant within the benefits of the Workmen's Compensation, Insurance and Safety Act of this state. In the case of *Ocean Acc. etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 322 [L. R. A. 1917B, 336, 159 Pac. 1041, 1044], it was said: "In the very broadest sense, of course, it is true that an injury which happens to a man who is on his way to his place of employment is an injury 'growing out of and incidental to his employment,' since a necessary part of the employment is that the employee shall go to and return from his place of labor. But it is to be noted that the right to an award is not founded upon the fact that the injury grows out of and is incidental to his employment. It is founded upon the fact that the service he is rendering at the time of the injury grows out of and is incidental to the employment. Therefore, an employee going to and from his place of employment is not rendering any service, and begins to render such service only when, as has been said, arriving at the place of his employment, he proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his tasks."

The case of *Clapp's Parking Station* v. *Industrial Acc. Com.*, 51 Cal. App. 624 [197 Pac. 369], is also pertinent here, for while the court was unable to conclude from the facts before it that the deceased was on his way to his lunch at the time he was injured, the language of the decision clearly indicates that if such had been the case, no recovery could have been had as the injury would not have arisen out of and in the course of the employment.

In the case of *Dominguez* v. *Pendola,* 46 Cal. App. 220 [188 Pac. 1025], this court said: "The logical difference between a situation where the employee is proceeding to work in a conveyance or by a means used by the general public and where he is proceeding to work by means of an instrumentality furnished to him as an employee, by his employer, is indicated in one of the English cases discussed in the Ocean Accident case, *supra.* (*Leach* v. *Oakley Street & Co.,* 4 B. W. C. C. 91.) In the quotations from the English case which is inserted in the Ocean Accident decision, it is indicated that in order to recover under the Workmen's Compensation Act, it is necessary for the employee to have suffered his injury not because of a danger to which he was

exposed as a member of the general public, but by reason of a danger to which he was exposed as an employee in his particular employment. And it seems to us that this is not only the logical dividing line, but it is the dividing line contemplated by the very purpose of the compensation laws in their effort to place upon an industry the burdens of injuries directly due to the hazard incidental to the industry. In the present case, if deceased had been riding upon a public conveyance, though he was on his way to his work, he would have been subject to the same dangers as any other member of the general public, and if he suffered an accident, it would have been as a member of the general public and due to a risk which he in common with other members of the public ran. But when he enters a vehicle provided by his employer for the purpose of conducting him to the place of his employment, he enters that vehicle not as a member of the public, but as an employee of the defendant. In other words, the danger to which plaintiffs' decedent was exposed in riding in this automobile, alleged to have been unprotected and without guards or rails and driven by a negligent driver, was a danger to which he was exposed, not as a member of the public, but because, and only because, he was an employee of the defendant.''

The respondents herein admit that the present case does not fall within the rule of the last cited case, but maintain that the award in the present case was made ''upon a logical and reasonable extension of the doctrine'' of that case. We are of a different opinion. The logic and reason of charging an employer in a case where an employee is injured while riding on an instrumentality provided by said employer is that said employer has such instrumentality under his control. He may inspect and repair it; he must see that it is driven by competent and careful drivers. It is his business to look after such a conveyance, just as it is his business to look after the safety of the premises where his employees work. But when the employer does not own nor control the vehicle; does not even know that the employee will elect to use it; does not know whether it shall be driven by a reckless or a careful driver, or by a man who is intoxicated, or by one who is sober, how can it be either logical or just to hold him responsible for injuries occurring to the employee while riding to and from his

work in such a vehicle? Had applicant entered a conveyance provided by his employer to take employees to lunch, the risk attendant upon riding therein might be a risk incident to his status as an employee because only in that capacity would he enter the vehicle; but when he chose to accept an offer from a driver of a passing vehicle to take him to lunch—a matter of personal concern to himself—all possible connection with his employment was severed.

[2] But respondent urges that because the employer failed to furnish transportation to take applicant to his lunch, the employer is responsible for all risks connected with the means of transportation which applicant adopted. Does the failure to furnish customary transportation to an employee enlarge the employer's liability to such an almost limitless extent? If, upon the neglect of the employer to furnish transportation, the employee may seize upon a passing automobile which has a defective steering apparatus for his means of transportation, and charge the employer with damages for the consequences, where is the line to be drawn? May he not also elect to ride with an intoxicated driver, no other being at hand, or, in the absence of any automobile, might he board an airship? If we answer these queries by saying he may adopt a "reasonable" means of transportation, we enter a maze of uncertainty in each instance, in attempting to define a word with so variable a meaning. Is it "reasonable" to enter a conveyance with a defective steering mechanism? Was such defect patent? What kind of an examination would have revealed it? What examination on the part of the employee is necessary before he adopts any means of conveyance in order to make his choice "reasonable"? These and the many questions that crowd upon one in adopting the rule contended for by respondents plainly demonstrate its impracticability, as well as its gross injustice to an employer who would be charged because of something of which he had no knowledge and over which he had no possible control. We think it is not a logical extension of the rules already announced in this state governing the liability of an employer, under the Workmen's Compensation, Insurance and Safety Act, for injuries occurring to an employee while going to his work or returning therefrom. The general subject was carefully considered by our supreme court in the case of

61 Cal. App.—19

*Ocean Acc. etc. Co.* v. *Industrial Acc. Com.,* 173 Cal. 313 [L. R. A. 1917B, 336, 159 Pac. 1041], and, recently, in the case of *California Casualty Indemnity Exch.* v. *Industrial Acc. Com.,* 190 Cal. 433 [213 Pac. 257] (decided February 17, 1923), Justice Waste, speaking for the court in the last cited case, said: "It was not intended by the Compensation Act that the employer who comes within its provisions shall be the insurer of his employee at all times during the period of his employment. The employer is liable for compensation only when an injury occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (*Fairbank Co.* v. *Industrial Com.,* 285 Ill. 11, 13 [120 N. E. 457].) There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be some causal connection between the employment and the injury in the sense that, by reason of the employment, there was an unusual or additional exposure of the injured party to the kind or character of hazard and danger (in this case an ordinary street risk) which caused the injury. The injury must have its origin in a risk connected with the employment, and must have flowed from that source as a rational and natural course. (*In re Betts,* 66 Ind. App. 484 [118 N. E. 551].)"

This court is ever zealous to give to the Workmen's Compensation, Insurance and Safety Act a broad and liberal meaning to effectuate its purposes, and we are not insensible to the very unfortunate situation of the applicant in the present case, but we feel that the facts do not show that his injury was sustained in the course of and arising out of his employment within the meaning of the statute, and we find no authority in any of the decisions which have been called to our attention in this or any other jurisdiction to warrant the award made herein.

The award of the Industrial Accident Commission is annulled.

Nourse, J., and Sturtevant, J., concurred.