JOSEPH DATTILO'S (dependent's) CASE.

Suffolk.    October 8, 1930. — November 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.

Death, resulting to an employee from the igniting of gasoline, which he had spilled on his clothing while filling a gasoline engine connected with a compressor drill in the course of his duties and which was ignited when he scratched a match on his trousers to light a cigarette after he had eaten food at a lunch room, not maintained by his employer, whither he had gone while waiting under direction of his employer to return the compressor to the employer's place of business from a blacksmith shop where it was being repaired and its drills sharpened, as a matter of law was not caused by an injury received in the course of the employee's employment and was not compensable under the workmen's compensation act.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material facts are described in the opinion. By order of *Bishop*, J., a final decree was entered dismissing the claim. The claimant appealed.

*E. O. Proctor*, for the claimant.

*G. Gleason*, for the insurer.

PIERCE, J. This is an appeal from a decree of the Superior Court reversing the finding of the Industrial Accident Board and dismissing the claim for compensation.

The evidence for the claimant and the insurer was in substantial accord, and briefly stated is that Joseph Dattilo, the deceased employee, on December 21, 1928, and on two or three different prior periods, was in the employment of one Quigley, a contractor, who used in connection with his business a compressor, mounted on a motor truck, for drilling holes in rocks. The drills frequently had to be sharpened. Dattilo's duties were to run the compressor or drill, drive a truck or anything of

that kind, and help sharpen the drills. On December 21, 1928, the compressor had been at the blacksmith shop of one Kilcup all day and Quigley told Dattilo to go down and bring the compressor home. Dattilo arrived at the blacksmith shop at about five o'clock in the afternoon and found that there were seventy-one drills to be sharpened on this compressor. During the process of sharpening the drills the compressor was outside the blacksmith's shop; the hose from the compressor went through the window of the shop and connected with a jerk-hammer, used to sharpen the drills, operated by the gasoline engine on the compressor. In the course of the work on the drills the compressor engine stopped, and Dattilo said he would have to go and get more gasoline. He was absent about twenty minutes procuring the gasoline. While he was pouring it into a tank in the machine some of it was spilled over his clothing. The machine started running and Dattilo came back into the shop. He wanted to go home and Kilcup, at his request, called up Quigley and told him Dattilo did not want to stay. Quigley told Kilcup to send Dattilo to the telephone. Dattilo talked with Quigley over the telephone, and was told he " had better wait " until the work was finished. At that time there were probably twenty to thirty drills to be sharpened and there was a probability Dattilo would have to wait until eight or eight-thirty o'clock in the evening. When Dattilo returned to the shop and had put the gasoline in the tank he told Kilcup that it was all right, to go ahead, that he was all wet with gasoline and cold and was going to get some coffee. At about six o'clock he left the shop and went to a small variety grocery store, which was one hundred eighty-one feet from the door of the blacksmith shop and was maintained as a lunch room for men employed in two or three garages thereabout. He bought a cup of coffee and a piece of cake; he said he was hungry and it would be late when he got home. After drinking his coffee and eating his cake he took a match from his pocket and scratched it on his trousers for the purpose of lighting

a cigarette he held in his mouth, and "he became a human torch." He never recovered from his burns and died at the hospital on April 28, 1929.

On the above facts the question for decision is whether the employee's injury which caused his death arose out of and in the course of his employment. We think the case at bar on its basic facts cannot be distinguished from the decisions of this court wherein it has been held that the injury was not compensable because not sustained during the course of the claimant's employment. *Ross* v. *John Hancock Mutual Life Ins. Co.* 222 Mass. 560. *Haggard's Case,* 234 Mass. 330. *Rourke's Case,* 237 Mass. 360. *Bell's Case,* 238 Mass. 46. *Gardner's Case,* 247 Mass. 308. *Babineau's Case,* 254 Mass. 214. *Savage's Case,* 257 Mass. 30.

If it be assumed that the employee when injured was in the course of his employment, we do not here decide whether the striking of the match upon the gasoline-soaked overalls of the employee was an independent, intervening efficient cause which broke the causal connection between the presence of the gasoline and the injury and made the primary cause too remote, as the insurer contends.

*Decree affirmed.*