MRS. MATHEW PILLEN, Respondent, v. THE WORKMEN'S COMPENSATION BUREAU OF THE STATE OF NORTH DAKOTA, Appellant.

(235 N. W. 354.)

Opinion filed February 23, 1931.

*Thos. J. Burke,* Assistant Attorney General, for appellant.
*Charles L. Crum* and *Scott Cameron,* for respondent.

BURKE, J. At the time of the accident in this case, the Hughes

Electric Company was building the new power plant immediately east of, and at the end of the main street in Beulah, North Dakota. The property was entirely enclosed with a fence. The main street of Beulah extends right down to the gate in the fence through which employees and persons having business with the Hughes Electric Company or the Fuel Economy Engineering Company pass. The power plant is back about three hundred feet east of the gate. About three blocks west of the gate the general traveling public not having business with the Hughes Electric Light Company or the Fuel Economy Engineering Company turned south and went around the plant, and while the main street extended to the gate and the property on either side of the street was not owned by the Hughes Electric Light Company the principal traffic on the end of the street was by employees, and persons having business with the Hughes Electric Light Company and the Fuel Economy Engineering Company.

Prior to the accident Mathew Pillen, a mechanic, was employed by the said Hughes Electric Light Company, and during a part of that time the Fuel Economy Engineering Company was also employed by the Hughes Electric Light Company in the installation of machinery in the plant. On the sixth day of August, 1927, Pillen's employment with the Hughes Electric Company terminated, and he was employed by the Fuel Economy Engineering Company to assist in the installation of the machinery. He began working for the Fuel Economy Engineering Company on the seventh day of August, 1927, and on the eighth day of August, 1927, in going to his luncheon at noon he fell from a truck driven by an employee of the Fuel Economy Engineering Company, receiving injuries from which he died.

His widow filed a claim with the compensation bureau and after a hearing thereon, the claim was denied upon the ground that the injury was not received in the course of employment, thereafter, this action was brought in the district court, findings of fact and conclusions of law were made by the trial judge favorable to the plaintiff, and from a judgment thereon the defendant appeals.

The sole question involved, is, was Pillen injured in the course of his employment? The evidence relating to his employment and the accident is in substance as follows: Witness Samuel Helvik testified: "I was employed by the Hughes Electric Company, building a new

power plant at Beulah, installing boilers, tubulars and condensers. The Fuel Economy Engineering Company was a subcontractor for steel work and was doing a part of the work under an independent contract. I employed Matt Pillen to work for the Hughes Electric Company. We furnished him transportation from Bismarck to Beulah and back, and we also paid his hotel bill at Beulah, for sleeping quarters and meals, and so much per hour. I think around sixty cents per hour. He worked about two weeks and then went to work for the Fuel Economy Engineering Company. Mr. Delaney was the foreman of that company and I mentioned to Mr. Delaney what I was paying and also the agreement I had with Mr. Pillen for board and room. At the time Pillen came to Beulah he stopped at the same hotel I did and where all the rest of the men working for the company (Hughes Electric Light Company) were staying and the same were ordered to stay. The bills for expenses for the Hughes Electric Company were all billed direct to the Hughes Electric Company of Bismarck by the hotel manager." Ques. "Have you any knowledge about the bills of the Fuel Economy Engineering Company?" Ans. "I could not say. There is another hotel and some of the employees of the Fuel Economy Engineering Company were staying in private houses. I don't know how the board and room of the Fuel Economy Engineering Company was paid for, and I don't know whether they asked them to live in a certain place."

Thomas W. Delaney testified: "I have charge of the men for the Fuel Economy Engineering Company. I employ them and discharge them. Mathew Pillen was working for the chief engineer of the Hughes Electric Light Company, who told me he wouldn't need Pillen any more on Saturday. So he started to work for me on Sunday morning, the seventh of August, and the accident was reported on the eighth day of August. He worked for me a day and a half. His wages were sixty cents an hour and living expenses, board and room, two dollars and fifty cents for board and room. There were no arrangements made by the Fuel Economy Engineering Company for the transportation of the employees to and from town. I did not direct the men to travel in any particular manner to and from work. If the Johnson truck was used by any of the men it was merely an accommodation by Johnson. Pillen was not on any errand for the company and had no pur-

pose in going that day, except, to get his lunch. I know, for he worked directly under me at the boiler."

Mr. Johnson testified: "I am foreman of my own work for the Fuel Engineering Company. Pillen was not working for me. He was working on the boiler with Tom Delaney. I furnish my own tools and use my own car or truck. On the day he was hurt I was waiting for Tom Delaney and I hollered to Pillen 'Dad come back and ride with me.' The Fuel Economy Company does not furnish transportation. When I have the truck I haul the men who are working on the job with me. I couldn't haul all of them, there were eight or ten at the time, but some of the boys have their own cars, and the men ride with them too. The accident happened about 100 feet outside the gate. I wasn't driving fast. There was a car right ahead of me and I heard somebody holler and when I looked back the old man was lying on the road. We ran back picked him up and took him to the doctor's office. There is a fence clear around the property. He (Pillen) is in the habit of smoking most of the time. I think while he was lighting his pipe, his feet were hanging down, we struck that rough place in the road and before he got hold of anything he fell off. There was no transportation supplied on which the men were required to ride."

Gerhard Helvik testified: "I saw Mr. Pillen on the truck that day going to town for dinner. He was on the end gate on the back end, sitting with his feet hanging down. They hit a bump and the car raised up and the chain unhooked. I couldn't say exactly but something similar and the end gate fell down and he fell. I saw him fall, and went right to him."

Ralph Sanders testified: "I worked for the Hughes Electric Light Company at Beulah. Mr. Pillen worked in the power house which sets back to the west of what we call "Main Street" of Beulah. There is only one road running down there. He had to go that way. The power house they have it fenced in with fence across the end of the street and there is a gate there. I should judge about three hundred feet from the power house and then from the gate to the first house I would judge to be about a block·two or three hundred feet. The road that runs down to the power house was used almost exclusively by employees of the Hughes Electric Light Company, and people having

business with the company. If a person was going through east, they would turn south about three blocks before they got to the power house. Mr. Pillen generally rode to his meals with Mr. Johnson on his truck. I had my own car and· there were times when the boys rode with me. It was general practice there for the fellows living in the hotel to pile into any car going in that direction. The street that goes down to the Hughes Electric Plant is the main street in Beulah, clear to the gate, but as I stated before, the traffic goes east before it reaches the gate."

From this testimony it is clear that neither the Hughes Electric Light Company nor the Fuel Economy Engineering Company had any contract with Mr. Pillen to transport him from the hotel to the plant, or the plant to the hotel. During the time that he worked for the Hughes Electric Light Plant under Mr. Helvik, Johnson who was in the employ of the Fuel Economy Engineering Company, frequently invited him to ride on his truck in going to and from the hotel. There is no evidence that Pillen rode with Johnson after he was employed by the Fuel Economy Engineering Company, except, on the day of the accident, and it appears from the testimony of Johnson, that Pillen had started to walk to the hotel, for Johnson testified: "I was waiting for Tom Delaney and I hollered to Pillen 'Dad come back and ride with me.' " Delaney was delayed and they started for the hotel without him, Pillen sitting on the end gate which was apparently lying flat, level with the floor of the truck and held by chains. After driving about 100 feet from the gate and while Pillen was lighting his pipe the truck struck a rough place in the road, the chains holding the end gate became loose the end gate dropped and Pillen fell upon the ground. His employer, The Fuel Economy Engineering Company, did not own the premises upon which the electric light plant was being built, and was not under contract to transport Pillen to and from the hotel. The injury was received on a public street over which the employer had no control. Pillen was paid by the hour, was not under pay at the time of the accident and was not subject to the control of the employer.

To support the finding that the injury was received in the course of employment respondent relies upon the case of Cudahy Packing Co. v. Industrial Commission, 60 Utah, 161, 28 A.L.R. 1394, 207 Pac. 148. In this case the commission found that the injury was received in the course of employment. The court in its opinion concedes, that

the weight of authority denies to an employee the right to compensation for any injury received while on his way to or from his employment and that courts are usually controlled in allowing or denying compensation by the peculiar facts in each case. It further states, that if there is liability for the injury under consideration it must be found upon the inferable facts that the danger incident to the crossing of this railroad track by reason of its location and proximity to the packing plant must be held to have been within the contemplation of the parties at the date of the employment. This case went to the Supreme Court of the United States. Cudahy Packing Co. v. Parramore, 263 U. S. 418, 68 L. ed. 366, 30 A.L.R. 532, 44 S. Ct. 153, 23 N. C. C. A. 744, and the court held, that the construction placed upon the Utah Statute, by the supreme court of Utah, was binding on the Supreme Court of the United States, and the judgment was affirmed.

A similar case from Utah, except that the accident was on private grounds, is the case of Bountiful Brick Co. v. Giles, 68 Utah, 600, 251 Pac. 555, affirmed in 276 U. S. 154, 72 L. ed. 507, 66 A.L.R. 1402, 48 S. Ct. 221. On appeal to the United States Supreme Court the Utah decision was affirmed for the same reasons. In this case the employees entered into the brick plant through an opening in the railroad fence between two posts set a few feet apart. It was in fact a private way used by all the employees. Other cases of like import are Procaccino v. E. H. Horton & Sons, 95 Conn. 408, 111 Atl. 594; Merlino v. Connecticut Quarries Co. 93 Conn. 57, 104 Atl. 396; Corvi v. Stiles & R. Brick Co. 103 Conn. 449, 130 Atl. 674; Starr Piano Co. v. Industrial Acci. Commission, 181 Cal. 433, 436–438, 184 Pac. 860; Sundine's Case, 218 Mass. 1, L.R.A.1916A, 318, 105 N. E. 433, 5 N. C. C. A. 616. An examination of these cases discloses peculiar circumstances in each case, taking the case out of the general rule, and bringing the place of injury within the contract of employment by the requirement of its use by the employee.

In the case of Lumberman's Reciprocal Asso. v. Behnken, 112 Tex. 103, 28 A.L.R. 1402, 246 S. W. 72, the injury was received in crossing a railroad track adjacent to the premises upon which the employee worked, the employer owning the land on both sides of the railroad. The court said:

"The injury to Behnken comes within the recognized exception to

the general rule, refusing compensation to employee for injury sustained on the way to or from work, under acts providing compensation for injuries received in the course of employment. . . . Under facts, it is plain that Behnken's injury had to do with, and originated in, the business of his employer, since the condition of his employment necessarily and constantly subjected him to a special danger inseparable from the regular movement over the crossing of railroad engines and cars, regardless of whether operated by his employer or another."

A case very much in point with the case at bar, except that the risk was much greater, is the case of State ex rel. Gallet v. Clearwater Timber Co. 47 Idaho, 295, 66 A.L.R. 1396, 274 Pac. 802, the Idaho court held, that a fatal injury received when an employee driving his automobile to work is struck by a train on a public railroad crossing, over which the employer has no control, does not arise out of, and in the course of his employment, even though the route taken by him is the most direct and practical one from the highway to the employer's premises. The facts were, that immediately adjoining employer's premises and paralleling the south line is the right of way of the main line of the Northern Pacific Railway. Immediately adjoining this right of way, and parallel to it on the south, is a public highway leading from the city of Lewiston from which there are two crossings leading directly over the Northern Pacific right of way and track to the premises of the mill company. It was necessary to use one of these and to cross this right of way and railway track to reach the premises. Pierce was driving his own automobile from his home in Lewiston to his work. In driving across one of these crossings, his automobile was struck by a passenger train from the north, and he was killed. This crossing was the first reached by the deceased, and was the most direct and practical route to be taken by him in traveling from the highway to the premises of defendant. It had been built and maintained for many years by the city of Lewiston, and used by the general public in going to and from a public city camp grounds and fair grounds, maintained thereon *up to about two months before the accident, since which time the defendant had acquired and occupied the premises in constructing its plant thereon.* It was open to the public and used by others as well as by employees of the defendant and employees of a power company operating on premises due north

of those of the defendant in reaching the premises of each of these companies. The employer had no control over the crossing or of the means of travel by deceased. Nothing is shown to change the public character of this crossing.

The authorities are carefully reviewed in the opinion in this case and the court points out, that all of the cases coming within the exception to the general rule, that an injury received on a public street, or way, is not in the course of employment, except, the Parramore case, "were all those of injury upon private ways over private premises, and not one of them holding a public way to be in effect part of the premises of an employer, or extending the rule of interpretation to include hazards of a public way as within the contract of employment, and furnish no support for the contention of appellant. They were not upon their facts cases of departure from the general rule as to ways over the premises of the employer or over private property of another expressly or impliedly furnished by the employer or used with his invitation." It calls attention to the late Massachusetts decision in the Fumiciello Case, 219 Mass. 488, 107 N. E. 349, which distinguishes the Sundine's Case, 218 Mass. 1, L.R.A.1916A, 318, 105 N. E. 433, 5 N. C. C. A. 616, from that involving an injury upon a public way in no way controlled by an employer. And it points out the rulings of the English courts. In the case of Stewart & Son v. Lawnhurst, Ann. Cas. 1917D, 198. Lord Dunedin said: "As regards the facts of this case, I cannot do better than borrow the words of Pickford, L. J.: 'The workman in this case in order to get to the actual place of work had to enter and leave premises on which he had no right to be and no reason for being, except by the conditions of his employment, and in crossing them to encounter dangers which he would not have encountered but for that employment.'" Lord Atkinson said: "When a man walks along the public street to get to his work he is doing something which he has a perfect right to do irrespective altogether of his employment. The right does not spring from his employment at all. It belongs to him as a member of the public."

In the Fumiciello's Case, 219 Mass. 488, 107 N. E. 349, supra, the court said: "It is plain that if, as the record states, it was necessary for him to pass over the railroad location, it formed no part of the employers' plant; nor was it in any way connected therewith or in

their control as was the common stairway used by employees in Sundine's Case, 218 Mass. 1, L.R.A.1916A, 318, 105 N. E. 433, 5 N. C. C. A. 616. The contract of employment did not provide for transportation or that he should be paid for the time taken in going and returning to his place of employment, and when the day's work had ended the employee was free to do as he pleased. If he had chosen to use the public ways, and had been injured by a defect or passing vehicle, the administrator could not recover against the employer because there would be no causal connection between the conditions of employment and the injury suffered. McNicol's Case, 215 Mass. 497, L.R.A. 1916A, 306, 102 N. E. 697, 4 N. C. C. A. 522."

In the case of California Highway Commission v. Industrial Acci. Commission, 61 Cal. App. 284, 214 Pac. 658, the California court held that, "An employee of the Highway Commission injured during the noon hour while riding in a defective automobile belonging to a fellow employee from the place of employment to a camp maintained by the employer about two miles distant where he intended to purchase his dinner, *held* not to have sustained an 'injury in the course of and arising out of his employment' . . . nor would the employer's failure to furnish transportation be creative of any liability for risks connected with the means adopted, though it was a custom for the employees to ride employer's truck to and from camp."

In the case of Southern Surety Co. v. Galloway, 89 Okla. 45, 213 Pac. 850, the Oklahoma court said: "Where an employee is engaged driving a team in constructing street paving, and drives the team on to the parking under the direction of the foreman, and then leaves his team and goes diagonally across the street to a bread wagon to get something for his lunch, and, while returning from the bread wagon to the place where he had left his team, is struck by an automobile driven by a person not employed by the construction company, the accident does not arise out of the employment."

In the case of Moore v. Sefton Mfg. Co. 82 Ind. App. 89, 144 N. E. 476, the court said: "Concisely stated, appellant's contentions are that his going out to lunch was a necessary incident of his employment; that the driveway across the sidewalk was the private driveway of appellee leading to his property; that it was a part of the premises and working place where appellant was employed; that the sidewalk

over which he was traveling was the only one leading from appellee's factory to the restaurant, and was the one he and other workmen used in going to the restaurant for their lunch; . . . that it was necessary in doing the work of appellee that he have food and refreshments; that it was necessary to use the driveway which crossed the sidewalk in going from appellee's factory to the restaurant; and that the relation of employer and employee existed. . . . It may be conceded that it is fundamentally necessary for a workman to have food and refreshment. It is also necessary that he have sometime during the 24 hours of the day in which to rest and sleep, but that did not give him the right to compensation when he has got through with his work, has left his place of employment, and is injured on his way home while traveling on a public highway. The fact that the public authorities have so constructed the sidewalk as to make it convenient to reach appellee's property with automobiles and other vehicles did not necessarily make it a part of appellee's plant or convert that part of the street into a private driveway which appellant was required to use in the performance of any duty that he owed his employer.

"This is not a case where the employee was injured in going to or returning from his work upon the employer's premises. . . . The facts in this case do not bring it within the holding of such cases as Sundine's Case, 218 Mass. 1, L.R.A.1916A, 318, 105 N. E. 433, 5 N. C. C. A. 616, supra; O'Brien's Case, 228 Mass. 380, 117 N. E. 619; Cox's Case, 225 Mass. 220, 114 N. E. 281; Bylow v. St. Regis Paper Co. 179 App. Div. 555, 166 N. Y. Supp. 874." In all of these last mentioned cases the employees were injured while still on the premises of the employer and it is well settled that such injuries are within the course of employment. Brink v. J. W. Wells Lumber Co. 229 Mich. 35, 201 N. W. 222.

In the case of Nesbitt v. Twin City Forge & Foundry Co. 145 Minn. 286, 10 A.L.R. 165, 177 N. W. 131, the Minnesota court said: "An accidental injury to a workman sustained while he was riding to his place of work in a conveyance furnished by his employer in compliance with one of the terms of the contract of employment and for the use of his employees, but in which the workman was not directed or required to ride, does not arise out of and in the course of employment; . . . it appearing that the injury was received before, and not dur-

ing, the hours of the workman's service, when his employer had no control over him and before the beginning of the period covered by his wages." In this case the employee was paid by the hour, the same as in the case at bar.

In the case of Guiliano v. Daniel O'Connell's Sons, 105 Conn. 695, 56 A.L.R. 504, 136 Atl. 677, it is held: "Injury to an employee hired and paid by the hour, by the burning, hours after work, of the barn in which the employer had gratuitously allowed the employees to sleep, did not arise in the course of his employment."

In the case of Denver & R. G. W. R. Co. v. Industrial Commission, 72 Utah, 199, 62 A.L.R. 1436, 269 Pac. 512, the Utah supreme court said: "A laborer, whose time was computed from the time he left the section house in a truck furnished by his employer, for his place of work, until he returned there in the same manner in the evening, did not exist until such employee reported for duty at the section house, and his death in a collision while he was riding in the truck, whose operator lived near him, to the section house, did not arise out of or in the course of his employment . . . even though the employer's foreman on previous occasions had seen him and other employees riding to the section house on the truck, and had said nothing about it."

"Where an employer as a matter of courtesy, and without any understanding as to transportation, conveys his employee to or from work, an accident then occurring is not covered by the Workmen's Compensation Law. Walker v. Hyde, 43 Idaho, 625, 253 Pac. 1104; Bass v. Shreveport-Eldorado Pipe Line Co. 4 La. App. 107; Nugent v. Lee Lumber Co. 4 La. App. 371; Gruber v. Mercy, 7 N. J. Mis. R. 241, 145 Atl. 106; Glaser v. Ideal Guarantee Roofing Co. 221 App. Div. 434, 223 N. Y. Supp. 237; Schultz v. Beaver Products Co. 250 N. Y. 565, 166 N. E. 326, 62 A.L.R. 1441 note."

In the case of De Constantin v. Public Serv. Commission, 75 W. Va. 32, L.R.A.1916A, 329, 83 S. E. 88, the West Virginia court held: "An injury incurred by a workman in the course of his travel to his place of work, and not on the premises of the employer, does not give right to participation in such fund, unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract."

In Clark v. Voorhees, 231 N. Y. 14, 131 N. E. 553, the New York

Court of Appeals said: "Where an employee left his employer's place of business for the purpose of going to a restaurant between 400 and 500 feet away for a cup of coffee and was struck by a motor truck while in the public street, the injury did not arise out of the employment or within the course of employment."

Industrial Commission v. Ahern, 119 Ohio St. 41, 59 A.L.R. 367, 162 N. E. 272, the Ohio Court said: "No custom, rule, or regulation adopted by an employer will be permitted to place an employee in his employment, if no employment in fact existed at the time of the injury, or if such custom, rule, or regulation materially changes the ordinary and commonly accepted meaning of the phrase 'in the course of employment.' "

In the case of Dreyfus & Co. v. Meade, 142 Va. 567, 129 S. E. 336, the Virginia court said: "Night watchman, whose place of duty was on the premises of employer, cannot fairly be said to have been injured 'in the course of employment' where injury occurred on streets after he had left premises to go two blocks away for lunch." Quoting the statement from Judge Crump in the case of Life Ins. Co. v. Wood, 7 Va. L. Reg. (N. S.) 827 as follows: "The risk of going to lunch is not a risk incident to the employment, but 'is rather an incident of life generally.' "

In the case of Taylor v. Binzwanger, 130 Va. 545, 107 S. E. 649, the court said: "Injuries received by employees, off the premises of the employer and going to or from lunch, do not arise out of or in the course of their employment." See also Bundy v. State of Vermont Highway Dept. 102 Vt. 84, 146 Atl. 69; Compensation Review, 378; De Rosa v. Levering & G. Co. 111 Conn. 655, 151 Atl. 246.

Case of Pearce v. Industrial Commission, 299 Ill. 161, 18 A.L.R. 523, 132 N. E. 440, the Illinois court said: "An injury from a fall upon a sidewalk of a public highway to an employee in a building, who had gone for supplies for the noon day lunch in accordance with an agreement among certain of the employees to purchase such supplies, and prepare and eat them upon the premises of the employer, in preference to carrying cold lunches does not arise out of his employment."

In the Paulauskis' Case, 126 Me. 32, 135 Atl. 824, the employee was struck by an engine on a railroad crossing on Congress street in

the village of Rumford, 125 feet from the door of the mill where he worked and where he was going to work at the time of the accident. "Remarking upon the fact that this portion of Congress street was fenced on either margin; that its major use was by employees of the respondent company, and that it was 'not conceivably in any general use,' the commissioner classes it as 'a publicly maintained private way;' finds that the workman, when the accident occurred, 'was within the zone, environment and hazards of the scene of his labors,' and rules that compensation is due." The findings of the commissioner were reversed the court holding, that the injury did not arise out of the employment.

In the Rawson's Case, 126 Me. 563, 140 Atl. 365, the court said: "This court has not passed on an exactly similar case. Fogg's Case, 125 Me. 168, 132 Atl. 129, involved an injury to a fireman. He was injured while on his way home to his noonday meal. The court held the injury compensable, on the ground that the injured man was subject to duty, at all times, even while at his meals. Beers' Case, 125 Me. 1, 130 Atl. 350, involved an injury while a workman was on his way to his home to dinner, but he was riding in a conveyance furnished by the employer and so riding at the employer's request, to save time, there being no stated noon hour. To the same effect is Littlefield's Case, 126 Me. 159, 136 Atl. 724. These cases more nearly approach the instant case than do any others in which this court has found liability. They are exceptions to the general rule that an injury resulting from an accident in a public street is not compensable even though the injured person is on his way to or from work. Paulauskis' Case, 126 Me. 32, 135 Atl. 824; Kinslow's Case, 126 Me. 157, 138 Atl. 561; Ferrerri's Case, 126 Me. 381, 138 Atl. 561.

"This general rule is subject to certain definite classes of exceptions. They are well set forth in Whitney v. Hazard Lead Works, 105 Conn. 512, 136 Atl. 105. Four of them may be noted: (1) Where the employment requires the employee to travel on the highway; (2) Where the employer contracts to and does furnish transportation to and from work; (3) Where the employee is subject to emergency calls, as in the case of the fireman; (4) Where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer.

"The present case does not fall within these exceptions. It is true that in going to the post office from his place of work on an errand for his employer, petitioner was attending to a duty which had been assigned to him as a part of his daily work; but after reaching his home and telephoning the rush orders to the office, the service to be rendered his employer ceased. He was then at leisure to eat his lunch and return to his work at his own time, so long as it was within the limits of his noon recess, by such route as he should select and by such means of conveyance as he desired.

"When he returned, he was to bring with him such mail, if any there was, as he had received at the postoffice, but the carrying of the mail on his return journey was incidental. The primary object in view was to return to his work. This he would have done regardless of whether or not there was mail to carry."

The latest Massachusetts case is the Dattilo's Case, — Mass. —, 173 N. E. 552, decided in November, 1930. In this case the employee's duties were to run the compressor or drill, drive a truck and help sharpen the drills. He was sent by his employer to the blacksmith shop to bring the compressor home. When he arrived there, there were seventy-one drills to be sharpened on the compressor. It was necessary for the employee to get some gasoline and while he was pouring it into the tank in the machine some of it was spilled on his clothes. He talked over the phone with the employer and was told he had better wait until the work was all finished. At that time there were probably 20 to 30 drills to be sharpened and there was a probability Dattilo would have to wait until 8 or 8:30 o'clock in the evening. At about six o'clock he left the shop and went to a small variety grocery store which was 181 feet from the door of the blacksmith shop and was maintained as a lunch room for men employed in two or three garages thereabout. He bought a cup of coffee and a piece of cake, after drinking his coffee and eating his cake he took a match from his pocket and scratched it on his trousers for the purpose of lighting a cigarette he held in his mouth and "he became a human torch," and the court said: "We think the case at bar under its basic facts cannot be distinguished from the decisions of this court wherein it has been held that the injury was not compensable because not sustained during the course of employment."

"Accident 'in the course of employment' means accident which occurs while workman is doing duty he is employed to perform." Farmers' Gin Co. v. Cooper, — Okla. —, 294 Pac. 108.

It is clear from the great weight of the authorities that an injury to an employee going to and from his work is not in the course of his employment, unless the employment requires the employee to travel upon the highway, as in the case of a traveling salesman. Second, where the employer contracts to and does furnish transportation to and from work requiring the employee to ride on conveyance furnished. Third, where the employee is subject to emergency calls as in the case of a fireman. Fourth, where the employee is using the highway in doing something incidental to his employment with the knowledge and approval of the employer, as stated in the Rawson Case and the Whitney v. Hazard Lead Works Case, 105 Conn. 512, 136 Atl. 105. To the exceptions noted we might add a fifth, viz., where the employee is injured on the premises of the employer. Does the case at bar come within any of the exceptions? Pillen was not injured on the employer's premises, but on a public highway 100 feet from the enclosed premises and 400 feet from the place where he worked. The employer did not own the premises and there is no evidence that either the employer, or the Hughes Electric Light Company had any control over the public street or authority to keep it in repair. Pillen was not under pay, nor under the control or supervision of the employer at the time of the accident. Transportation was not furnished by the employer and Mr. Pillen was at liberty to eat his lunch and return to his work by such means of conveyance as he desired. He was not doing anything he was employed to do at the time of the injury. He was in no different position than that of any other employee going to and from his place of work and was subject to no greater or different risk than that of any other pedestrian. It was not like the Parramore Case, 263 U. S. 418, 68 L. ed. 366, 30 A.L.R. 532, 44 S. Ct. 153, 23 N. C. C. A. 744, supra, where the plant was built adjacent to the railroad for convenience in shipping, or the other injury cases cited, where employees were injured on railroad crossings, necessary to pass over to reach the plant, and which were permanent continual risks. In the instant case it cannot be said that the employer and employee had in mind at the time of the contract of employment a

rough place in the street as a risk of the employment. The injury was not received in the course of employment and the judgment must be and is reversed, and the case is ordered dismissed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.