[File No. 7071]

JOHN WELCH, Respondent, v. THE NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(31 NW2d 498)

Opinion filed March 2, 1948

*Nels G. Johnson,* Attorney General, and *P. B. Garberg,* Assistant Attorney General, for appellant.

*Robert W. Palda,* for respondent.

BRODERICK, District Judge. This is an appeal from a judgment of the District Court of Ward County, in favor of the plaintiff, John Welch and against the North Dakota Workmen's Compensation Bureau, wherein the court awarded the plaintiff, John Welch, the sum of $2016.24 for expenses of hospital, medical care and disability benefits, arising out of an injury sustained by the plaintiff and alleged by him to have been sustained in the course of his employment, as an employee of the State Highway Commission, and the sum of $394.20 attorneys' fees.

This claim arose out of an accident wherein the plaintiff was struck by an automobile on the 11th day of September, 1945 on Main Street in the Village of Parshall. Plaintiff was employed by the State Highway Department to cut weeds along the highway in the vicinity of Parshall, North Dakota, using a mower drawn by a team of horses, which mower and team of horses were owned by the plaintiff, for which he was paid an hourly wage of seventy-five cents for his own services and was also paid fifty cents an hour for the use of his mower and team. He was working under the direct supervision of one Arthur Clark a maintainer of the State Highway Department who had his headquarters at Parshall, North Dakota.

The plaintiff had come in off the road on Saturday evening, September 8, 1945. He testified that the wheels on his mower were out of order and that he desired to repair his mower and put some "Model T" tires on the same and that he had been advised by Mr. Clark, under whose supervision and direction he was working, that he could repair his mower, "on the State's time and that all he had to do was to pay for the repairs and put the mower together on their time." The testimony of Mr. Clark shows that he had said to Mr. Welch, "I told him whenever he broke down to put it on the Highway time."

The testimony shows that it rained on Monday, September 10, and that he took his mower to the blacksmith shop for the purpose of having it repaired and have "Model T" tires put on it; that he assisted the blacksmith as much as he could in the repairing of the mower; that on Tuesday morning the repair job was still uncompleted and about 10:00 o'clock he went up town to Norby's Garage or hardware store to get an inner tube to put in one of the casings; that he got the inner tube that Mr. Norby had and returned to the blacksmith shop with that. Upon his return to the blacksmith shop he heard that one Ed Nelson had gotten in a "big bunch" of tubes and he then went down to Nelson's to get another tube. After he purchased the second tube from Mr. Nelson he came out of Mr. Nelson's place of business with the tube and, "cut across the street to the postoffice for the purpose of getting some daily report cards from the highway department" that had been mailed to him from the district office at Minot and while crossing the street from the postoffice, on his return to the blacksmith shop, he was struck by an automobile and sustained the loss and injury complained of. It appears from the testimony of Mr. Clark that Mr. Welch and other men working for the State Highway Department in a similar capacity to that of Mr. Welch, were required to fill out and send in to the division office at Minot, one of these daily report cards for each day he worked, showing the number of hours worked, when they started and when they quit.

Plaintiff, at the time of the accident, was performing services incidental to his employment; that is, he was returning from the postoffice where he had gone to obtain the time sheets that were sent to him by the District Office of the State Highway Department at Minot, which time sheets were required to be filled in, signed and mailed to the District Office daily, as required by §§ 24–0302–03–04 of the 1943 Revised Statutes. The provisions of said sections, therefore, automatically became part of any contract entered into by an employee of the Highway Department.

In the case of Hackley-Phelps-Bonnell Co. v. Industrial Commission, 165 Wis 586, 162 NW 921, LRA1918A 277, 279, the Supreme Court of Wisconsin said,

"The duty to pay and the right to receive compensation were integral parts of the contract of employment."

"So, in going to get his pay, he was but fulfilling a duty imposed upon him by the employer. . . . He was entitled under his contract to receive compensation for his services. He went in obedience to the duty imposed upon him by his employer and acquiesced in by him, performing the last act under the contract whereby each could receive full benefit thereof."

In the case at bar, he was required by his contract of employment and also by statute to send in his daily report to the Highway Department at Minot and it was, therefore, a part of his contract.

The record shows that the plaintiff sent in daily reports for the hours he worked on September 10 and also for September 11, the latter daily report showing that he had worked for the State Highway Department on that day from 7:00 o'clock in the morning to 10:00 o'clock A.M., at which time he was injured. The State Highway Department sent him a check to pay for his services rendered on September 10 and 11.

The Appellant, in its brief and in the argument of counsel, raised the question as to whether the plaintiff was an employee or an independent contractor. It seems clear to the court that under the facts of this case the plaintiff was an employee.

In the case of Bernardy v. Beals, ante, 377, 28 NW2d 374, this court held,

"One of the most important tests to be applied in determining whether relationship of employer and employee exists, so that the Workmen's Compensation Act is applicable, is whether the person for whom the work is done has the right to control not merely the result, but the manner in which the work is done and the methods used in its performance, and an important factor in determining the right of control is the power of the employer to terminate the employment at any time without liability."

The question to be determined is whether or not, under the facts and circumstances in this case, the injury complained of was one arising out of and in the course of the employment.

Counsel for the Appellant has cited the cases of Kary v. Workmen's Comp. Bureau, 67 ND 337, 272 NW 340 and Pillen v. Workmen's Comp. Bureau, 60 ND 465, 235 NW 354, in support of his contention that the injury to the plaintiff is not compensable under the Workmen's Compensation Act. In the case of Kary v. Workmen's Comp. Bureau, 67 ND 334, 272 NW 340, our Supreme Court said, at page 339,

"However, there is a limit to these acts growing 'out of the employment.' In Whitney v. Hazard Lead Works, 105 Conn 512, 136 A 105, the court says: 'The tests to be applied are: Does the injury occur within the period of employment? Does it occur in a place where the employee may reasonably be? Does it occur while he is reasonably fulfilling the duties of his employment?' All three must concur under the circumstances."

We think, in the case at bar, those three tests may be answered in the affirmative. In the Kary Case (ND) supra, the court further said,

"There is respectable authority which would uphold allowance of compensation for injuries received while taking care of a team owned and furnished by the workman when the injury was received during the period of employment; but in the case at bar the period of employment was for definite hours and no injury was received during that period."

While the record shows that the mower he was working on was his own private mower and that under his contract of employment he would have to keep it in workable condition in order to perform the work that he was hired to do, he testified that his superior advised him that he could have the machine repaired and that he could make such repairs on the Highway Department's time, but he would have to pay for the parts himself and, as stated before, this is to some extent corroborated by the testimony of Mr. Clark.

The rule is stated in 71 CJ 676, paragraph 421(2) Workmen's Compensation Acts, Repair or Care of Property of Employee Used in Employment.

"That the employee is to furnish his own tools or equipment does not necessarily preclude the finding that a particular act, involving the preparation or preliminary use of such tools or equipment, is in the course of the employment. (Frandsen v. Industrial Commission, 61 Utah 354, 213 P 197). That question still depends upon the time, place, nature, and character of the act and its relationship or incidence to the employment. Accordingly an injury to an employee putting his own vehicle into condition for use in the employer's business during the employee's usual hours of labor arises out of and in the course of the employment; . . ."

In the case of McCrary v. Wolff, 109 Neb 796, 192 NW 237, the Supreme Court of Nebraska said,

"It is true, however, that a correct determination of any case of this character must depend largely upon the peculiar facts and circumstances surrounding the particular case in hand. Sometimes what would seem at first to be a very slight fact or circumstance arising in the case will influence the entire decision, resulting in a conclusion different from what otherwise it would have been."

In Bookman v. Lyle Culvert & Road Equipment Co. (1922) 153 Minn 479, 190 NW 984, in sustaining a recovery under the Workmen's Compensation Act to a clerical employee who was struck by an automobile while she was on the street to

place her employer's mail in a mail box, the Supreme Court of Minnesota said,

"In Hansen v. Northwestern Fuel Co. 144 Minn 105, 174 NW 726, the court definitely committed itself to the doctrine that an injury to an employe, engaged in his employer's service in a duty calling him upon the street, by what is usually called a street risk to which his work subjects him, arises as a matter of law out of his employment, although others so employed, or the public using the streets, are subject to such risks. A number of cases are there cited and the rule which we adopt is in general harmony with the American cases and the modern English doctrine."

See Annotations to Colarullo's Case, 258 Mass 521, 155 NE 425, 51 ALR 508, 517.

The Appellant, in its brief, concedes that the receiving of these daily report blanks might be an incident to the mowing of the weeds, as will be noted from the following statement contained on page 31 thereof.

"While receiving reports at the postoffice may be considered as an incident to the mowing of the weeds, yet we must bear in mind the fact that under the contention of claimant he took his orders from Mr Clark, who is stationed at Parshall."

The court cannot see any inconsistency in the fact that he took orders from Mr. Clark at Parshall and the fact that going to the postoffice to receive the daily report cards was incidental to his employment. As a matter of fact, Mr. Clark himself testified as follows:

"Question: Can you inform this Commission with regard to the men working for the Highway Department in a similar capacity as Mr. Welch, sending in these cards?

Answer: They have to send them in each day and put in when they start and when they quit."

The trip he made to the postoffice was not purely on his own personal business, he went there to get the daily report blanks which he was required to fill out and send in. That was a duty imposed on him in connection with his contract of employment, and in fact such daily reports were required by the Highway

Department to be made out and sent in not only by him but by all employees similarly employed. These daily report cards were printed on a self-addressed, postage prepaid postal cards, the printed address on them reading, "State Highway Department, Box 1386, Minot, North Dakota." Therefore it certainly must have been in the contemplation of the State Highway Department that Mr. Welch would go to the postoffice not only to get his supply of daily report blanks but that he would also go to the postoffice to mail them back to it. This going to the postoffice was an incident, an activity, connected with his employment and the injury he sustained was received in the course of his employment and is compensable.

In the case of O'Leary v. Workmen's Comp. Bureau, 62 ND 457, 462, 243 NW 805, this court held,

"The North Dakota Compensation Act provides that compensation shall be paid on account of all injuries received by employees within its protection 'in the course' of their employment. Section 396A10, 1925 Supplement as amended. It does not require that the injuries shall arise 'out of' the employment as is the case under the provisions of the compensation Acts in most jurisdictions. See Schneider, Workmen's Compensation Law 2d ed ¶ 262. The words 'in the course' of employment have reference to the time, place and circumstances of the accident resulting in the injury for which compensation is claimed."

The court in that case said,

"The reasonable inference is that he was then engaged in the business of the bank, though that business may not have been the sole reason for his being on the highway when and where the accident occurred, nevertheless he was doing what a man might reasonably do within a time during which he was employed and at a place where he might reasonably be during that time to do that thing. . . . The test is not whether he would have done what he was doing at the place of the accident when it occurred had he not been performing some act incidental to his employment but whether he would have been there, doing what he was doing, because of something incidental

to his employment even though he had no personal reason for being there. If he would have been there in reasonable furtherance of the bank's business, though he had no personal reason therefor, then his being there was incidental to his employment. . . . That there were concurrent reasons for his being there, one personal, the other pertaining to his employment, is immaterial so only that the one pertaining to his employment was such as to insure his being there regardless of the others."

See also Barrager v. Industrial Commission, 205 Wis 550, 238 NW 368, 78 ALR 679.

In the case of Desautel v. Workmen's Comp. Bureau, 72 ND 35, 4 NW2d 581, 141 ALR 858, 859, this court held,

"An injury in order to be compensable under the North Dakota Workmen's Compensation Law (Chapter 286 Session Laws 1935,) must arise in the course of the employment. The statutes of many states require that the injury in order to be compensable must not only arise in the course of the employment but also arise out of it. We had occasion to call attention to the difference in statutes in Kary v. Workmen's Comp. Bureau, 67 ND 334, 272 NW 340, 341, . . . Our statute is more liberal with regard to the right of recovery than those that require a compensable injury to 'Arise out of' the employment. 'In the course of employment' means in the course of the work that the employee is hired to do or in the performance of that which is incident to the work. If the injury occurs within the period of employment at a place where the employee may reasonably be and while he is engaged in performance of the duties of his contract, or is engaged in something incident thereto and contemplated thereby it may be said to arise 'in the course of employment.' . . . These words should be given a broad and liberal construction in conformity to the humanitarian purpose of the statute."

In the case of Lockheed Aircraft Corp. v. Industrial Acci. Commission, 28 Cal2d 756, 172 P2d 1, the California Court said,

"When an employee is combining his own business with that of his employer or attending to both at substantially the same

time, no nice inquiry will be made as to which business he was actually engaged in at the time of the injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer."

"An injury is compensable if received while employee is doing reasonable things which his contract of employment expressly or impliedly authorizes him to do."

In the case of National Auto. & Casualty Ins. Co. v. Industrial Acci. Commission, 75 Cal App2d 677, 171 P2d 594, the California District Court of Appeals held,

"Reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee."

As stated by the Supreme Court of New Jersey in the case of Geltman v. Reliable Linen & Supply Co. 128 NJL 443, 25 A2d 894, 139 ALR 1465, 1467,

"The manner in which the accident is brought about is not at all of the essence of the matter; the vital question always being: Was the accident connected with the employment? If it was, then it arose out of the employment, provided it occurred in the course of the employment."

The judgment of the District Court of Ward County is therefore affirmed.

CHRISTIANSON, Ch. J., and BURKE, J., and THOM, District Judge, concur.

NUESSLE, J., concurs in the result.

BURR and MORRIS, JJ., did not participate.