# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

## STATE OF MAINE

---

### BEERS' CASE.

Cumberland.   Opinion October 1, 1925.

*Under the Workmen's Compensation Act, if at the time of the accident the employee is "doing his regular work," it may be regarded as equivalent to saying that he was injured in the course of his employment.*

*Where by consent and desire of the employer, the employee rode upon a truck of employer in going to and from his home to dinner, thus saving time to the benefit of the employer, the errand of the truck at moment of injury being immaterial, constitutes causal connection between the conditions of the case and the injury, and an accidental injury while thus riding would be one rising out of the employment.*

On appeal.   Claimant was awarded compensation for an injury which occurred while he was riding on a truck of employer with the consent and desire of the employer in going to his home for his dinner; in alighting from the moving motor truck, on arriving at his home, he broke a bone in his leg.   An appeal was taken.

Appeal dismissed.   Decree below affirmed.

The case fully appears in the opinion.

*Frank P. Preti*, for claimant.

*Oakes & Skillin*, for defendant.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, JJ.

PHILBROOK, J.   This is an appeal by the employer and insurance carrier from a decree granting compensation under the Workman's Compensation Act.

That the injury was an accidental one is conceded, but the issue raises the oft recurring question whether the injury suffered was one arising out of and in the course of the petitioner's employment.

Briefly stated, he claims that he was a dairyman helper and all round man, doing errands, and "anything they told me." At the time of the accident he says that he was riding on the employer's truck, on his homeward way, for dinner; that in a can he was carrying two quarts of milk, one of which was for his own consumption and the other for a neighbor, Mrs. Barber, who had requested him to get the milk for her; that as he stepped from the truck, while it was in motion, he fell and broke his leg; that when the truck was going his way he usually rode upon it; that such custom of riding was with the knowledge and consent of the employer.

Mr. Redfern, treasurer of the respondent company, testified at the hearing that this custom of riding was known and not objected to, by him; that it was understood and agreed that the men, when going home to dinner, or at night, should use the trucks when they wanted to do so; that it would save time and that the company would get more of the services of their men if they rode home and rode back. He further testified that there was no stated time for a noon hour and that because of the very uncertainty of the hours of business he allowed the men to use the trucks. "Sometimes the men would be delayed so much I felt mean not to get them home as soon as I could," said he in testimony.

In the employer's first report of injury, made on form twenty-one, a blank provided by the Industrial Accident Commission, and in this case signed by Mr. Redfern, occur four significant statements,

1. "Q. Was injured employee doing his regular work?"
"A. Yes."
2. "Q. Was employee injured in course of employment?"
"A. Yes."
3. "Q. Did accident happen on the premises—if away from the plant state where?"
"A. On way home to dinner riding on one of our trucks."
4: "Q. Describe in full how the accident occurred?"
"A. Custom for men to ride on trucks when going to meals in order that time may be saved. Stepped from truck when moving slowly, broke large bone one inch above ankle by not landing on even ground and was thrown."

While his interpretation of legal questions involved may not be conclusive upon the employer, much less upon other interested parties, yet his understanding of the facts of the case, as an intelligent layman would view them, is quite different in some respects than that of astute counsel who now contest the petitioner's claim.

The first two questions are so correlated that answer to one is answer to both. If an employee is "doing his regular work," at the time of his accidental injury, it would seem impossible to avoid the conclusion that he was injured "in the course of his employment."

Who better than the employer would know whether an employee is "doing his regular work" at the time when an accidental injury occurred? Since the employer admits, and the Chairman of the Industrial Accident Commission has found, no fraud appearing, that the petitioner received his injury in the course of the employment, we are not disposed to differ from that admission and finding.

Did the accidental injury arise out of the employment? In *Westman's Case*, 118 Maine, 133, we held that the great weight of authority sustains the view that the words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked, and the injury which he received. Applying that test to the present case, a result in favor of the petitioner is easily and clearly reached. He was riding on one of the company's trucks. Just what errand the truck was upon at that particular moment is not important. By consent, and even desire, of the company, the employees rode upon the trucks in order to save time, whereby the company would get more of the services of their men. Because he was thus riding he received his injury.

The claim that the injury arose from so-called "horse play" is not sustained by evidence of probative value.

*Appeal dismissed.*
*Decree below affirmed.*