### DAVID C. FOGG'S CASE.

#### Cumberland.    Opinion February 19, 1926.

*A permanent member of a municipal fire department who sleeps at the station house, is on duty the entire twenty-four hours in each day, has a limited period in each day in which to go to his home for meals, and is subject to duty upon an alarm of fire while at his meals, if accidentally injured while alighting from a street car on his way home to a meal, may properly be found to have suffered an injury arising out of, and in the course of his employment.*

In the instant case the causal relation between the employment and the injury is not too remote to preclude the legitimate inference that the risk which resulted in the injury was incidental to the conditions of the employment which exposed the employee to the injury.

On appeal.   Claimant was a fireman in the employ of the city of Portland, and on October 29, 1924, he left the engine house where he was stationed to go to his home for lunch on electric cars and in alighting from a car in making a transfer to another car he was struck by a passing automobile and seriously injured.   The issue involved was as to whether the accident arose out of and in the course of his employment.   Compensation was awarded and an appeal taken from an affirming decree.   Appeal dismissed.   Decree below affirmed.

The case is fully stated in the opinion.

*Hinckley & Hinckley*, for petitioner.

*H. C. Wilbur*, for respondent.

SITTING: PHILBROOK, DUNN, MORRILL, STURGIS, BASSETT, JJ.

MORRILL, J.   Appeal by employer from award of Chairman of Industrial Accident Commission.   Injury by accident is admitted; the issue is whether the injury was one arising out of and in course of claimant's employment; upon the evidence submitted the Chairman so found.

The evidence of the claimant tended to show, and the Chairman was justified in finding that claimant was, on the date of the injury, a

permanent man, with the rank of Lieutenant, in the fire department of the city of Portland, stationed at Hose Station 11; that he lived and slept at the station house, and that his hours of duty were twenty-four hours a day; that the permanent men at the station house were allowed three hours a day for their meals, which were fixed by agreement among the men as most convenient; when so fixed the men were not at liberty to change them without notifying the office or the Chief of the Department. Claimant had been a permanent man since 1908, and when he was transferred to Hose 11, owned and lived in a house two miles distant from the station, and had continued to live there, and was living there at the time of the accident. Because he could not get to his house, eat his meals, and return to the station in the one hour allowed, he arranged to take his breakfast to the station house and eat it there, and to have one hour and a half each for his midday and evening meals; in going to his home he was obliged to transfer on the street cars. On the day of the injury his hour for leaving the station was 11:05 A. M., and he was injured while alighting from an electric car on his way home. He was subject to duty at all times; if an alarm for fire came while he was at his meals, it was his duty to answer the call as soon as possible, if within his district; if the alarm was a second or general alarm, it was his duty to go whether it was within his district or another.

So far as the testimony of the Chief of the Department tended to show that there were no general orders on some points, or that the conduct of the men was not uniform, the Chairman was warranted in accepting the positive statements of the claimant, if he believed them. Upon appeal from an award in his favor we cannot pass upon the weight of the evidence; it must be taken most favorably for the claimant.

The words "in course of" refer to time, place and circumstances, under which the accident takes place. *Westman's Case*, 118 Maine, 133, 142. At the time of the injury the claimant was on duty; he was doing something which a man employed in such a calling may reasonably do within the time during which he is employed, and at a place where he might reasonably be during that time. *Bryant* v. *Fissell*, 84 N. J. L., 72, 86 Atl., 458. The fact that he was on his way home for his midday meal, in accordance with a routine permitted and approved by his superiors, did not in any manner, break or

suspend the relationship of employee. *Madura* v. *City of New York*, 144 N. E., 505. Clearly the injury was received in the course of his employment.

The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked, and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. *Westman's Case*, 118 Maine, 133, 143. *Mailman's Case*, 118 Maine, 172, 180.

We think that this is not the case of a common hazard to which persons having occasion to use the streets are exposed, but rather falls within the cases of hazard by reason of his employment. *John Moran's Case*, 234 Mass., 566, 125 N. E., 591, in which the court says: "In the case at bar, the workman, to do the work of his employment, must continually stand in danger of receiving an injury from accidents resulting from exposure to whatever risks and hazards are commonly attendant on the use of public streets and conveyances, which risks to him are greater because more constant than those incidental to the occasional and casual use of such streets by persons who use them in the ordinary way."

In the instant case the claimant was on duty at the time of the accident; the relationship of employer and employee still existed during the meal hours, and he was in a place where at that hour he might reasonably be in connection with his duties, and was there in the usual routine of his duties.

We are of the opinion that the causal relation between the employment and the injury was not too remote to preclude the legitimate inference that the risk which resulted in the injury was incidental to the conditions of the employment which exposed the employee to the injury. *Keaney's Case*, 232 Mass., 532, and cases cited. The finding of the Chairman is in harmony with the second general rule stated in *Robert's Case*, 124 Maine, 129, 131.

*Appeal dismissed.*
*Decree below affirmed.*