RITA J. BABINE, PET'R.
*vs.*
LANE CONSTRUCTION CORPORATION
AND
LIBERTY MUTUAL INSURANCE COMPANY, RESPTS.

Cumberland.   Opinion, February 5, 1958.

*Berman, Berman & Wernick,*
*John J. Flaherty,* for plaintiff.

*Forrest E. Richardson,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, SULLI-
VAN, DUBORD, JJ.   TAPLEY, J., did not sit.

WEBBER, J.   Louis C. Babine, deceased husband of the
petitioner, lost his life in an accident while employed by

Lane Construction Corporation on August 20, 1955. There is no material dispute as to the essential facts which were fully found by the Industrial Accident Commission. Babine's employer was under contract with the Maine Turnpike Authority to place the "final top" on the turnpike including the traveled portion and shoulders in the area extending from the South Portland exit northerly to the Androscoggin River in Auburn. As is well known, the new turnpike is designed to be a divided, limited access, toll highway running from Kittery to Augusta. On the day of this accident the contractor's work was by no means completed. Work of various types was in progress in areas in the section covered by the contract. The pavement was in varying stages of completion and work was being done on the shoulders in some places. Sections of both the north bound and south bound lanes were closed to the movement of vehicles. The turnpike had not been open to public travel and, although some members of the public were undoubtedly driving vehicles over the area at times, it is fair to assume from the undisputed evidence that most, if not all, of them were there without invitation or license. Several other contractors were engaged in other phases of the construction at the same time and in the same areas.

On the evening before the accident, Mr. Babine, a roller operator, had left his roller at a point on the turnpike where he had ceased operations at the close of the work day. His work schedule called for his resumption of work at the same place at 7 A.M. on the day he was killed. He was temporarily residing at a hotel in Lewiston. On the day of the accident he was awakened by the desk clerk about 5 A.M. A short time later he appeared wearing clothes suitable for work. He had breakfast with a fellow employee, after which both set off in their own cars. At about 6:40 A.M. the Babine car was observed entering the turnpike area from the public highway known as Route 122 in Auburn.

The turnpike at this point was within the section being constructed by the employer. Mr. Babine then proceeded about half a mile in the south bound lane and in a southerly direction, the north bound lane then being closed to the movement of vehicles. At this point the fatal accident occurred. The automobile was then traveling toward the site of Mr. Babine's own work assignment some sixteen miles away. From this evidence the Commission concluded and found as a fact that the deceased was then on his way to work. We do not understand that respondents now press their contention that this was a finding of fact without supporting evidence, but in any event we think the inference is entirely reasonable and we doubt that any other could properly be drawn from the circumstances.

The morning was foggy and the visibility poor. Near the scene of the accident the hard top had not been placed on the surface of the road and work was in progress on the shoulders. A stone spreader was parked on the south bound lane, partly on the roadway and partly on the shoulder. Mr. Babine, traveling at about 40 to 45 miles per hour, pulled to the left to pass the stone spreader and then, failing promptly to turn back to the right, collided with a truck owned by the respondent contractor and proceeding at about 40 miles per hour in the opposite direction. Mr. Babine was instantly killed.

It is true that the deceased need not have entered the turnpike area where he did in order to get to the place where his work called him. There was a public highway available from which he could have entered the area at any one of several points. Without doubt he chose the course for his own convenience. Nevertheless he had traveled the area frequently in the past as had other employees. There was no company rule or order in effect prohibiting employees from traveling the area going to and coming from work even though the company was aware that employees

were using the turnpike for that purpose. Each employee furnished his own transportation to the point where his work was to be performed and therefore it was necessary for him to travel for some distance over the turnpike area even though that distance might be short.

Upon this evidence the Commission found that the accident occurred "in the course of" and "arose out of" the employment. No case yet decided in Maine determines the issues here presented.

The requirement that the accident to be compensable must have occurred "in the course of" the employment relates of course to time, place and circumstances. "An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *J. Fournier's Case*, 120 Me. 236, 240. That case clearly indicated that one who is in a forbidden place or on a forbidden route is not in a place where he may reasonably be and his accident is therefore not "in the course of" employment. It is therefore significant that in the case at bar the employer had not issued orders or promulgated rules prohibiting employees from using the turnpike area as a route to and from the place of work. Apart from such prohibitions, the employee ordinarily enjoys the protection of the Act while going to and coming from the location of his work assignment and while on the employer's premises. In *Roberts' Case*, 124 Me. 129 at 131 the court stated that " 'the course of his employment' does not begin and end with the actual work he was employed to do, but covers the period between his entering his employer's premises a reasonable time before beginning his actual work and his leaving the premises within a reasonable time after his day's work is done and during the usual lunch hour, he being in any place where he

may reasonably be in connection with his duties or entering or leaving the premises by any way he may reasonably select." Roberts' case went on to extend coverage to a private way leading to the employer's premises which the employer and his employees had a right to use but over which the employer had no control, this way being the *only* means of access by vehicles to the employer's premises from the nearest public street.

What constitutes an employer's premises is sometimes difficult to determine. It cannot be doubted that when a contractor takes his crew upon the premises of another to perform a contract for that other, those premises become the premises of the contractor employer for the purpose of determining whether an accident occurs "in the course of" the employment. When the construction of highways is involved, problems of unusual difficulty present themselves. In *Kattera* v. *Burrell Const. & Supply Co.* (1943) 152 Pa. Super. 591, 33 A (2nd) 498, 500, the court said:

> " 'It cannot be seriously contended when an employer engages in highway construction that the premises shall, therefore, take in its entire length and breadth of the route. * * * The courts, in cases of this kind, have restricted the term 'premises' in work of this character to include only that portion of the highway (on) which construction is in actual progress, so that the 'premises' of the employer in such cases are transitory and temporary, changing as the work proceeds from day to day or hour to hour.' "

Our court has refused to extend coverage to the employee on a public highway or street; *Dinsmore's Case,* 143 Me. 344; *Paulauskis' Case,* 126 Me. 32; *Kinslow's Case,* 126 Me. 157; unless the circumstances fall within the exceptions stated in *Rawson's Case,* 126 Me. 563. It may be noted, however, that in each of these cases the employee had left the zone of employment created risk and entered the area

of common hazard, of risks shared equally by all members of the public. In *Ferreri's Case,* 126 Me. 381, the claimant was crossing a public highway open to the public. His employer, a contractor, was engaged in work on the shoulders of the highway and along the sides of the road not involving the traveled portion or impeding the flow of traffic thereon. No duty of his employment required the employee to be where he was when he was struck by a vehicle. Our court treated the claimant as subjected only to the risks incurred by any pedestrian on a public highway. It refused to consider that the traveled portion of the road was, under these circumstances, part of the "premises" of the employer; but the court said at page 382:

> "It might well be that such a section of highway, *while under actual construction,* could be so considered." (Emphasis supplied)

In so saying, the court recognized that a persuasive argument can be made that modern road construction of the traveled portion of a highway creates risks and hazards to those employees who work there, and that the work area is converted, temporarily at least, into the employer's "premises" for compensation purposes. The court further stated at page 383:

> "When the work had reached a point where the traveled portion of the highway was completed, the road opened for public travel and there was no longer necessity for employees to go upon it in the performance of the duty which they owed to their employer, that portion of the highway *ceased to be included* in the premises of the employer, *even if it might be assumed to have been properly so included prior to that time."* (Emphasis supplied)

Upon facts which closely resemble those in the case before us, a Justice of the Supreme Court of New York held that workmen's compensation was the exclusive remedy in

*Tynan* v. *Ellingwood et al.* (1953) 122 N. Y. S. (2nd) 768 (affirmed without opinion by the Appellate Division 130 N.Y.S. (2nd) 926). Here the employer was engaged in building the New York Thruway which had not been opened to public travel. The claimant was injured while riding in the car of a fellow employee on his way to work. The collision occurred on the portion of the thruway which was under construction, on which construction the plaintiff was employed. The court treated the area as the "premises" of the employer and therefore found that the accident occurred "in the course of" the employment.

We are satisfied as was the Commission that Mr. Babine's fatal accident occurred "in the course of" his employment. When he left the public highway at Route 122 and entered the turnpike area, he entered upon the "premises" of his employer for compensation purposes. The area was under construction by his employer. No road had been completed and the area was not open to public travel. It is safe to say that the very risks and hazards of construction were inconsistent with safe public travel and furnished a sufficient reason for not inviting public use. It is true that the decedent had many miles left to travel before he would arrive where his roller was parked, but that is to say no more than that the "premises" here were extensive. There can be no doubt but that during the whole course of his travel over the turnpike area, Mr. Babine would have been constantly exposed to the risks and hazards attendant upon highway construction in progress.

We liken this area to a long factory building fronted on its entire length by a public street with doors at either end of the building and at intervals along the street. An employee who approaches the north end of the plant from his home but whose machine or work station is near the south end may, if he desires, walk along the street to the south end, encountering as he proceeds only those hazards which

are common to the general public. He may, however, in the absence of a company rule to the contrary, enter at the north door and walk through the building exposing himself to whatever dangers are created by the employment. In the latter case he is on the employer's premises for compensation purposes. So Mr. Babine could have driven by public highway to the entrance nearest his work and then for only a short distance exposed himself to the risks of his employment. Instead he chose to traverse the entire zone of employment hazard. His death at such a time and place and under these circumstances was incurred "in the course of" his employment.

Did the accident also "arise out of" the employment? Was the employment the cause of death? The construction in progress necessarily tended to create confusion especially with respect to the movement of vehicles and self-propelled machinery. The surface was at different stages of completion. Sections were blocked off. Vehicles and machinery moved in both directions on both lanes. Machinery was parked in such a manner as to obstruct the movement of vehicles. The laws and rules of the road regulating and controlling the speed and method of operation of vehicles on public highways had no application here. This was a work area, not a highway. Surely there was an ever present danger that such a condition would produce a collision of vehicles. Mr. Babine was the victim of one of the hazards of his employment, and the Commission properly awarded compensation to his widow. The entry will be,

> *Appeal dismissed. Decree affirmed. Allowance of $250 ordered to petitioner for expenses of appeal.*