**Glenys M. OLIVER**

v.

**WYANDOTTE INDUSTRIES COR-
PORATION**

**&/or**

**Travelers Insurance Company.**

Supreme Judicial Court of Maine.

July 31, 1973.

Perkins & Townsend by Clinton B. Townsend, George W. Perkins, Skowhegna, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Robert F. Hanson, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

On appeal from a pro forma decree denying workmen's compensation to appellant. The material facts are not in dispute.

On February 25, 1971 Petitioner left the plant where she was employed by Defendant corporation. She had completed her work for the day and was returning to her home. She entered her automobile in her employer's parking lot and drove about a quarter of a mile along a private road known as Head of the Falls Road which, although open to the public, was maintained and controlled by her employer. This road rises on an incline and passes through a railroad underpass immediately before it enters Front Street, a public street in Waterville. Front Street is a two lane road approximately 20 feet wide carrying one way traffic in a northerly direction and one emerging from the private road is required to make a right turn into the line of traffic flowing north. The private road was icy and slippery and there

were high snowbanks at its intersection with Front Street. The Petitioner's car, while she was in the process of making this turn, was struck by a car proceeding on Front Street. There is no direct evidence as to whether or not any part of Petitioner's car remained on the private road at the moment of impact but there is evidence from which the Commissioner could reasonably infer that substantially all if not all of her car was on Front Street. Petitioner's car was hit on the left side and left front and the point of impact was very near the center line of the street. Moreover, Petitioner's own testimony lends support to this inference.

"Q. You were actually turning onto Front Street when you got hit, were you not?

A. Yes, but I had to go out there quite a ways to get on there.

Q. You had to ease out—

A. To see out around.

Q. You had to pull your car out onto Front Street to see?

A. Yes.

Q. And then you started—you didn't see anything, you started to turn and you were hit?

A. That's right."

It is at least clear that Petitioner was maneuvering to take a position in the line of traffic proceeding on Front Street at the time she was struck by the oncoming car.

The Petitioner, seeking compensation, contended that the location and condition of the private road combined with the presence of the high snowbanks at the intersection resulted in a blind and hazardous entrance onto Front Street. She testified that she was unable to ascertain whether traffic was approaching on Front Street until she had entered the street.

The Commissioner ruled during hearing that the condition of the private road approaching and at the intersection was not relevant to the issue of whether Petitioner's accident can be considered to have occurred in the course of and to have arisen out of her employment. He denied compensation ruling that "Petitioner was exposed to no greater risk than the public".

The issue of when an accident on the public highway may properly be said to arise out of and occur in the course of the employment has been before this Court several times.

■ This Court recognized in Roberts' Case, 124 Me. 129, 126 A. 573 (1924) that an injury suffered by an employee entering or leaving the premises of his employer on a way maintained by the employer to provide ingress or egress to the premises, or which the employer has the right to use for such purposes, is compensable. This position has been reaffirmed in Wheeler's Case, 131 Me. 91, 94, 159 A. 331 (1932) and in Dinsmore's Case, 143 Me. 344, 62 A.2d 205 (1948).

■ We have consistently recognized the principle that accidents occurring on the public streets when the employee is merely on his way to or from his place of employment are not compensable.[1] While we have referred to this principle as the "public street" rule we have applied it not as a convenient arbitrary delineation of the outer limits of the employer's responsibility but with recognition that it is necessitated by the fact that when the employee is exposed to the same hazards, and no more, as other members of the travelling public the accident cannot have arisen out of the employment.

1. Paulauskis' Case, 126 Me. 32, 135 A. 824 (1927); Kinslow's Case, 126 Me. 157, 136 A. 724 (1927); Ferreri's Case, 126 Me. 381, 138 A. 561 (1927); Rawson's Case, 126 Me. 563, 140 A. 365 (1928); Wheeler's Case, 131 Me. 91, 159 A. 331 (1932); Dinsmore's Case, 143 Me. 344, 62 A.2d 205 (1948).

Our reluctance to extend the responsibility of the employer into the public way has been paralleled, however, by our acceptance of the truth that in certain fact situations the risks of employment may logically carry over after the employee has entered the public way.[2]

This Court denied coverage in Rawson's Case, 126 Me. 563, 140 A. 365 (1928) to an employee who fell on an icy sidewalk on a public street while returning from his home during his lunch hour and carrying his employer's mail which he had received at the Post Office before arriving at his home. The Court recognized the general rule that an injury resulting from an accident in the public street is not compensable even though the injured person is on his way to or from work but acknowledged that there are exceptions to this rule. The Court noted four of them,[3] but did not suggest that there were not others. The Court then found that "the present case does not fall within these exceptions" and concluded that when the Petitioner was in the street he was in no different position from that of any employee going to and from his home and his place of work.

In Babine v. Lane Construction Corporation, 153 Me. 339, 138 A.2d 625 (1958) we dealt with a situation in which Babine collided with his employer's truck while driving to work over a still uncompleted seg-ment of the very highway in the construction of which he was then employed. The road had not been opened to public travel. We found that the risks to which Babine subjected himself were the hazards of construction which were inconsistent with the hazards of public travel. In analyzing the earlier cases of *Dinsmore, Paulauskis* and *Kinslow*, we noted that in each of those cases "the employee had left the zone of employment created risk and entered the area of common hazard, of risks shared equally by all members of the public".

We have not had occasion to examine a situation where the employee himself has left the employer's premises and is in the public street but is still actually within the area of employment risk and there was little if any precedent to guide the Commissioner in his evaluation of this evidence.

In Nelson v. City of St. Paul, 249 Minn. 53, 81 N.W.2d 272 (1957) the Petitioner was a teacher who was on her way to work and was walking along the public sidewalk adjacent to the school premises when she was struck by a ball which had been batted out of the school grounds by a student. The employer had contended that Petitioner's injury was not causally connected with her employment and that because the Petitioner was still outside of the geographical area of her employment when she was struck, her injury did not occur in

---

**2.** We found such to have been the case where a fireman, subject to call at all times, was injured on his way home to lunch (Fogg's Case, 125 Me. 168, 132 A. 129 (1926)); where the employee was on his way to lunch in a conveyance furnished by the employer in order to save time (Beers' Case, 125 Me. 1, 130 A. 350 (1925)); where the agreement of employment provided that the employer would furnish transportation from the employee's home to the area where the daily work was to be performed, during which travel the employee was injured (Littlefield's Case, 126 Me. 159, 136 A. 724 (1927)); and, where the employee was using the public way in pursuance of his employment (Kimball's Case, 132 Me. 193, 168 A. 871 (1933)).

**3.** "(1) Where the employment requires the employee to travel on the highway; (2) Where the employer contracts to and does furnish transportation to and from work; (3) Where the employee is subject to emergency calls, as in the case of the fireman; (4) Where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer."

In discussing the facts of *Rawson* we do not intend to suggest that today in a similar fact situation we might not conclude that such an employee had adequately brought himself within the protection of the fourth stated exception.

the course of her employment. The Court rejected these arguments saying:

". . . In the instant case the injury-producing hazard, the batting of a ball, as a part of the game activities sponsored by the school for the children on its playground, originated on the premises of the employer. Employee's duties included the supervision of the children's playground activities. Clearly, her injury arose out of the employment.

.    .    .    .    .    .

It is enough here to hold, as we must clearly do under any reasonable application of the Workmen's Compensation Act, that whenever the hazards of employment spill over the boundary line and injure an employee on his way to work, his injury arises within the statutory space limitations of the employer's premises and is compensable as having arisen in the course of the employment. . . ." Nelson v. City of St. Paul, supra, 249 Minn. at 56, 81 N.W.2d at 276, 277.

It was the contention of the present Petitioner that the private way over which she travelled to reach the public street was so situated as to present her with a blind entrance to the public street which made it impossible for her to determine whether traffic was approaching from her left until she was actually so far into the street that she was already exposed to the danger. In the words of the Minnesota Court, she claimed that a hazard on the premises of the employer spilled over into the public street.

The Commissioner denied compensation, holding that:

"The general rule in Maine is that off-premises accidents are not compensable. Wheeler's Case, 131 Me. 94, 159 A. 339. If the accident occurs while going to work or after leaving the premises, it is not compensable subject to the following exceptions: 1) where the employment requires the employee to travel on the highway; 2) where the employer contracts to and does furnish transportation to and from work; 3) where the employee is subject to emergency calls, as in the case of firemen; 4) where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer. See Rawson's Case, 126 Me. 563, 140 A. 365."

We believe that the Commissioner's position on the state of the law excluded effective consideration of Petitioner's claim that a dangerous condition existed on the premises maintained by her employer to provide ingress to or egress from the place of work—to wit, a blind exit from the premises into the public street—which was a hazard not common to the travelling public and which was a cause of her accident.

■ In our opinion, the Petitioner's accident would be compensable if it is found that a condition existed on the employer's premises which made hazardous the employee's exit into the public street and was in fact a cause of the employee being injured after she had reached the street.

The entry will be:

Appeal sustained. Further ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record, be paid by the Defendants to the Petitioner.

DUFRESNE, C. J., concurs in result.

WEBBER, Justice (dissenting).

I would deny the appeal. In my view the Court today departs from the concept of "employment created risk" heretofore well understood and clearly defined by Maine law. The extension of coverage to an employee involved in a typical public street accident cannot fail to create uncertainties for the Bar and unnecessarily difficult problems for resolution by the Court on a case by case basis.

The facts are fully and fairly stated in the Court's opinion. As therein stated the Commissioner specifically found that "Petitioner was exposed to no greater risk than the public." Under well established principles the evidence and inferences reasonably to be drawn therefrom must be viewed in the light most favorable to the Commissioner's finding. On the evidence presented he could properly conclude that the petitioner left the employer's premises and edged her car into Front Street to a point where she could see oncoming traffic; that based upon the judgment she then made of the speed and distance of approaching vehicles she elected not to stop and wait but rather to seek to enter the stream of traffic ahead of them; and that she was thereafter involved in an accident in the center of the public street. I would emphasize only that there is no evidence that any of the accumulation of plowed snow along the shoulder of Front Street in the direction of oncoming traffic had been placed there by her employer.

The case presents the issue as to when an accident on the public highway may properly be said to arise out of and occur in the course of employment.

Except in the case of clearly defined circumstances,[1] not applicable here, we have thus far consistently required that an accident, to be compensable, be shown to have occurred on premises owned or in some manner controlled or used by the employer. In Roberts' Case (1924) 124 Me. 129, 126 A. 573 the employee was killed in a railroad crossing accident while traversing by automobile a private road over land of the Railroad which constituted the only vehicular access from the employer's plant to the nearest public street. In that case the employer had obtained from the Railroad "the right to use this private way in connection with its plant, as a means of ingress and egress for * * * its employees in going to and from their work," and the employer "so far as was necessary for its uses, kept the way in repair." Our Court dealt with the "in the course of his employment" requirement in these terms:

"In construing this phrase the courts are not in accord as to when the 'course of employment' begins and ends. Two rules, however, appear to be generally accepted: First, that injuries received by an employee in going to and from his work on a *public street* or in a public conveyance, unless his means of conveyance is furnished by his employer,[2] are not received in 'the course of his employment'; * * * Second, that 'the course of his employment' does not begin and end with the actual work he was employed to do, but covers the period between his entering his employer's *premises* a reasonable time before beginning his actual work and his leaving the *premises* within a reasonable time after his day's work is done and during the usual lunch hour, he being in any place where he may reasonably be in connection with his duties or entering or leaving *the premises* by any way he may reasonably select." (Emphasis mine)

The Court concluded that under the particular circumstances of the case the location of the accident could properly be regarded as part of the employer's premises. There is, however, a negative implication that if

---

1. After stating the general rule that "an injury resulting from an accident in a public street is not compensable even though the injured person is on his way to or from his work," our Court in Rawson's Case, (1928) 126 Me. 563, 564, 140 A. 365, 366, stated the recognized exceptions as being: "(1) Where the employment requires the employee to travel on the highway; (2) Where the employer contracts to and does furnish transportation to and from work; (3) Where the employee is subject to emergency calls, as in the case of the fireman; (4) Where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer."

2. This exception was applied in Littlefield's Case (1927) 126 Me. 159, 136 A. 724.

the employee had completed egress onto the public highway and thereafter been involved in a railroad crossing accident, such an accident would not have been deemed to have occurred "in the course of his employment." Indeed, such was the result in Paulauskis' Case (1927) 126 Me. 32, 135 A. 824 where the employee was killed in a railroad crossing accident on his way to work while driving on a public highway, the crossing being about 125 feet "from the door of the mill." The Court concluded that "the words 'out of' refer to the origin, or cause of the accident, and the words 'in the course of' to the time, place and circumstances under which it occurred," and held "that an accident occurring upon a public way, when the employee is prosecuting no duty incumbent upon him by reason of his employment, is not compensable because not arising out of his employment, and not occurring in the course of his employment." This rule governed decision in Kinslow's Case (1927) 126 Me. 157, 136 A. 724 (automobile accident on public street).

Our Court rigidly adhered to the "public street" rule in Ferreri's Case (1927) 126 Me. 381, 138 A. 561. In that case the employee was working for a contractor who had completed construction of a public highway except for final work on concrete culvert endwalls, earth shoulders and guard rails. Petitioner was injured while walking on the highway on the way to his work location. Denying coverage, the Court stressed the fact that the traveled portion of highway had been completed and opened to public travel, and concluded that plaintiff was "exposed to the same risk to which any pedestrian in the same position would have been exposed. The hazard had no relation to his employment."

Holding that claimant had failed to bring himself within any of the recognized exceptions to the "public street" rule,[3] the Court in Rawson's Case, (1928) 126 Me. 563, 140 A. 365 denied coverage to an employee who fell on an icy sidewalk on a public street while returning from his home during his lunch hour and carrying his employer's mail which he had received at the Post Office.

An equally strict adherence to the "public street" rule is discernable in Wheeler's Case (1932) 132 Me. 91, 94, 159 A. 331. In that case the employer had erected a company village to provide housing for those of its employees who desired to live there while working on the construction of a dam some distance away. The village streets were maintained and controlled by the employer. The claimant, who resided outside the village, took his meals at a house within the village. Leaving that house to start to the job location, the claimant fell on ice in the village street. Our Court concluded that the street "was not built and maintained to provide access to the place of the work, but for the benefit of those who might choose to live in the settlement", and that "accordingly the decision is to be governed by those cases which deny compensation for injuries to employees suffered on a public highway while on their way to or from work." Distinguishing Roberts' Case, supra, the Court said, "It is, however, established that an injury suffered by an employee on his way to or from work, while entering or leaving the premises of his employer on a way maintained by the employer to provide ingress to or egress from the premises, or which the employer has a right to use for such purpose, is received in the course of the employment, and, if arising out of the employment, is compensable. * * * The test is not so much whether the employer owns or controls the place where the injury occurs, *but rather whether it*

---

3. The exceptions are fully set forth in Footnote 1, supra. In discussing *Rawson*, I intend merely to trace the development of the "public street" rule in this jurisdiction. I do not intend to suggest that

in a similar factual situation we might not now conclude that such an employee had adequately brought himself within the protection of the fourth stated exception.

*happens within the premises or on the approaches to the premises, where the work is to be performed."* (Emphasis mine)

Dinsmore's Case (1948) 143 Me. 344, 62 A.2d 205 brings us even closer to the problem at hand since the Court was in effect requested to liberalize the "public street" rule by holding compensable injuries suffered by an employee " 'on the premises of another than his employer, or in a public place, and yet * . * * so close to the scene of his labors, within its zone, environments, and hazards, as to be, in effect, at the place and under the protection of the act.' " Upon leaving work, the employee left the employer's premises on foot and entered and crossed the public highway. The employer maintained a parking lot on the opposite side of the street. The employee's natural and daily course of travel was across this parking lot to still another public street and thence to another private lot on which his automobile was parked. Crossing the street in front of the plant, the employee sought to pass between two of several busses parked along the opposite curb. These busses were maintained by the employer to deliver certain employees to their homes. He was caught and injured by a movement of one of these vehicles. After reviewing a number of authorities from other jurisdictions and concluding that they presented no generally accepted principle of law applicable to the facts before it, the Court concluded that when he entered the street, the claimant was a "free agent" and that he suffered "the same risks, and no more, that were confronting each and every traveler thereon at the time." The Court also deemed it significant that although it had steadfastly adhered to the "public street" rule for many years, the Legislature while amending the Act in many respects had not seen fit to enlarge its coverage "by changing the established connotation of the phrase 'injury by accident arising out of and in the course of * * * employment.' "

In Babine v. Lane Const. Co. (1958) 153 Me. 339, 138 A.2d 625 we were presented with the converse of the situation dealt with in Ferreri's Case, supra. In *Babine* the employer was constructing a segment of highway which had *not* been opened to the public. The employee was injured while driving within this work area. In sustaining an award we rested decision squarely on the fact that the accident did *not* occur on a public highway but rather on the "premises" controlled by the employer and where the work in which the employee was engaged was progressing. Thus *Babine* offered no digression from Maine precedent with respect to "public streets." Babine's fatal accident stemmed directly from a hazard arising from his employment. While turning out around his employer's stone spreader he was in collision with his employer's truck. In that connection we said, "There can be no doubt but that during the whole course of his travel over the turnpike area, Mr. Babine would have been constantly exposed to the risks and hazards attendant upon highway construction in progress." *Babine* was followed and applied in the companion case of Getchell v. Lane Const. Co. (1958) 153 Me. 335, 138 A.2d 629.

We are now again requested to reconsider and "liberalize" our "public street" rule, using the instant case as a vehicle for that purpose. My reluctance to extend protection into the public way where the risks or hazards are wholly or substantially those common to the public stems from an awareness that once an exception is made, it becomes increasingly difficult to determine with any degree of logic and consistency where to stop. All authorities agree that the line of the protected zone must be drawn at some point since no jurisdiction, so far as I can ascertain, affords protection to an employee over the entire course of his travel to or from work over public highways and streets. A review of the cases suggests to me that where the zone of protection has been extended, the new limits imposed have tended to be, if anything, more arbitrary than is the case when the line is drawn at the point of entry into

or departure from the public street. In this connection Larson's Workmen's Compensation Law, Vol. 1, Sec. 15.12 contains this sound admonition:

It is a familiar problem in law, when a sharp, objective, and perhaps somewhat arbitrary line has been drawn, * * *, to encounter demands that the line be blurred a little to take care of the closest cases. For example, one writer says that there is no reason in principle why states should not protect employees 'for a reasonable distance' before reaching or after leaving the employer's premises. This, however, only raises a new problem without solving the first. It raises a new problem because it provides no standard by which the reasonableness of the distance can be judged. It substitutes the widely-varying subjective interpretation of 'reasonable distance' by different administrators and judges for the physical fact of a boundary line. At the same time, it does not solve the original problem, because each time the premises are extended a 'reasonable distance,' there will inevitably arise new cases only slightly beyond that point—and the cry of unfairness of drawing distinctions based on only a few feet of distance will once more be heard. * * *

It is just such questions as these that have led the great majority of courts, for reasons that are perhaps as much administrative necessity as logic, to adopt the premises rule."

The most common ground of exception has been the existence of a "special hazard," deemed to become a hazard of the employment, upon the only or at least the normal route of the employee's access to the plant. It is difficult and indeed virtually impossible to reconcile the results in the many cases involving so-called "special hazard" situations. Illustrative of the problem are the so-called railroad cases. Perhaps in part because of the great weight and power of a railroad train, the difficulty in bringing it to an abrupt stop and its directional confinement to fixed rails, a number of courts have treated the railroad crossing off premises as such a "special hazard." The reasoning employed in Jaynes v. Potlatch Forests, Inc. (1954) 75 Idaho 297, 271 P.2d 1016, 1018 is fairly representative of cases affording compensation. In that case the employee drove his car from the employer's premises, passing a gatehouse maintained by the employer, along a public way about 200 feet to a railroad crossing where the fatal accident occurred. The gateman ordinarily acted as flagman at the crossing during shift changes but when the plant was shut down and only maintenance work was in progress, as was the case here, no flagman was on duty. The Court, speaking of the "special hazard" doctrine, said in part, "[I]t is not necessarily based upon nearness to the plant nor upon reasonable distance therefrom or even identifying the surrounding area as an integral part of the premises for all practical purposes but upon a causal relationship between the work and the hazard." Declining to distinguish between off premises injuries which occur on private property and those occurring on public streets and highways, the Court nevertheless carefully limited its intended "extension of the off-premises rule" to "a hazardous railroad crossing." Expressly overruled was the prior case of State ex rel. Gallet v. Clearwater Timber Co. (1929) 47 Idaho 295, 274 P. 802, a case involving the same crossing. Not all courts, however, have seen fit to extend the protected zone to a railroad crossing on a public street. Compensation was denied in Snodgrass v. Douglas Aircraft Co. (1965—Okl.) 406 P.2d 463; Bronson v. Joyner's Silver & Elect., Inc. (1964) 268 Minn. 1, 127 N.W.2d 678; but compare Johannsen v. Acton Construction Co. (1963) 264 Minn. 540, 119 N.W.2d 826.

That railroad crossings have been viewed as presenting a somewhat unique form of "special hazard" is evidenced by the fact that a majority of courts have declined to make compensable a fall on ice

on a public sidewalk even in close proximity to the plant entrance.[4] In Brousseau v. Blackstone Mills (1957) 100 N.H. 493, 130 A.2d 543 the employee on her way to work slipped on an icy public sidewalk about 200 feet from the place of employment. Noting that "in a greater number of cases recovery has been denied," the Court was unable to find any causal relationship between the injury and the risks of employment and denied recovery, "not because the injury occurred off the employer premises and on a public sidewalk but because it did not arise out of and in the course of the employment." Where the employee fell 2 or 3 feet from the entrance, the same reasoning produced the same result in Tromba v. Harwood (1962) 94 R.I. 3, 177 A.2d 186, followed in Peters v. Bristol Mfg. Corp. (1962) 94 R.I. 255, 179 A.2d 853.

I now turn directly to consideration of four cases which have come to our attention, the facts of which more closely resemble those of the instant case. The cases are evenly divided on the issue of compensability under such circumstances.

1. In Greydanus v. Industrial Acc. Comm. (1965) 63 Cal.2d 490, 47 Cal.Rptr. 384, 407 P.2d 296 the employee, driving his automobile on his way to work, completed a left turn to enter his employer's driveway. His car, still in the public way, was then struck by a vehicle attempting to pass on the left. In sustaining recovery, the Court said it was "clear that the point at which an employee is no longer 'going or coming' and has entered the area of his employment involves a factual determination." The Court was of the view that the employee, being required each day to turn off the highway into his employer's premises, "was exposed to a particular risk not shared by the public generally." In support of its statement that its result "accords with the trend of decisions in other states," the Court cited three cases which in my view fail to support that statement. The first of these cases is our Babine v. Lane Construction Co., supra, which as we have seen steadfastly adheres to the "off premises" and "public street" rules. The second case is Nelson v. City of St. Paul (1957) 249 Minn. 53, 81 N.W.2d 272. In that case a teacher was walking along the public sidewalk beside the school playground where some of the pupils were playing ball. She was struck and injured by a batted ball. Granting compensation, the Court stated the controlling factor in these terms:

"In the instant case the injury-producing hazard, the batting of a ball, as a part of the game activities sponsored by the school for the children on its playground, *originated on the premises* of the employer. Employee's duties included the supervision of the children's playground activities. Clearly, her injury arose out of the employment." (Emphasis mine)

That *Nelson* was intended by the Minnesota Court to be limited to its peculiar facts

---

4. Several of the cases denying recovery are discussed by Larson in Sec. 15.12: Gullo v. American Lead Pencil Co. (1938) 119 N.J.L. 484, 196 A. 438 (but cf. Hammond v. Great Atlantic & Pacific Tea Co. [1970] 56 N.J. 7, 264 A.2d 204) ; Acton v. Wymore School Dist. No. 114 (1961) 172 Neb. 609, 111 N.W.2d 368 (2 feet from entrance) ; Donzelot v. Park Drug Co. (1951–St. Louis C.A.Mo.) 239 S.W.2d 526 (a few feet from entrance) ; Madison v. Key Work Clothes (1957) 182 Kan. 186, 318 P.2d 991 (6 or 7 feet from entrance) ; Krebs v. Industrial Comm. (1929) 200 Wis. 134, 227 N.W. 287 (20 feet from entrance) ; Amento v. Bond Stores, Inc. (1948) 274 App.Div. 863, 82 N.Y.S.2d 1 (3 or 4 steps from entrance). See also Kammeyer v. Bd. of Education (1965–St. Louis C.A.Mo.) 393 S.W.2d 122. Illustrative of cases in which recovery was granted is Montgomery v. State Industrial Acc. Comm. (1960) 224 Or. 380, 356 P.2d 524 where employee was crossing the public street in front of the place of employment at a point where traffic was controlled by a traffic light operated by the company, the Court concluding that the necessity for crossing the street exposed the employee "to the hazards of the road in a degree greater than the general public."

and cases in which the "injury-producing hazard * * * originated on the premises" was made abundantly clear by the Court's discussion of *Nelson* in its later case of Johannsen v. Acton Construction Co. (1963) 264 Minn. 540, 119 N.W.2d 826, 828. Moreover, the *Johannsen Court* cited with evident approval its earlier decision in Sommers v. Schuler Chocolates, Inc. (1953) 239 Minn. 180, 58 N.W.2d 194 in which recovery was denied where the employee fell on an icy sidewalk adjacent to the employer's premises. The third case relied upon in *Greydanus* is Barnett v. Britling Cafeteria Co. (1932) 225 Ala. 462, 143 So. 813. In that case a divided Court granted compensation to an employee who fell on an icy public sidewalk in front of the employer's premises and about 20 feet from the entrance. The majority opinion emphasized the use made by the employer of the sidewalk as part of its business premises, and was no doubt influenced in part by the fact that water used to wash its plate glass windows had frozen and formed the ice on which the fall occurred. In a vigorous dissent the minority adopted the view that the risk of a fall was common to the public using the sidewalk. In my view none of the three cited cases lends support to compensability in the *Greydanus* situation.

2. In Nelson v. Douglas Fir Plywood Co. (1971) 260 Or. 53, 488 P.2d 795 plaintiff was injured when her vehicle, traveling south on a public highway, began a left turn to enter the employer's private road leading to the place of employment. Her vehicle was struck by the employer's flatbed truck coming out of the private road and swinging wide to turn onto the highway. The Court stated the Oregon rule in these terms:

"If the employee's employment requires him to use an entrance or exit to or from his work which exposes him to hazards in a greater degree than the common public, he is regarded as being within the course of his employment."

The Court deemed it immaterial whether the accident occurs on the public highway or a private road. The special risks were stated to be the necessity of making a left turn into the area "where the plywood truck and the 'jitneys' are leaving" to enter the highway, and the fact that the flatbed truck is a "fairly long vehicle" and "must swing to the far left to make the turn" onto the highway. The Court concluded that the general public would not be exposed to the same hazards as the "public would be traveling directly north and south." The emphasis placed on the presence of the employer's vehicles and their operation at the point of entry leaves some uncertainty in my mind as to what result the Oregon Court would reach if it were dealing only with, for example, the *Greydanus* facts.

3. In Templet v. Intracoastal Truck Line, Inc. (1969) 255 La. 193, 230 So.2d 74 the Court reached the opposite conclusion and denied recovery. In that case the employee's vehicle was struck from the rear by a car operated by a member of the traveling public while the employee was attempting a left turn from the public street into the employer's premises. Louisiana adheres to the "threshold" or "proximity" doctrine [5] permitting compensation for injuries sustained in an accident occurring before or after working hours, and off of, but within close proximity to, the premises of the employer. The Louisiana Court understands this rule, however, as applying only when there exists (1) a distinctive travel risk for the employee in going to and coming from work, and (2) this risk exists in an area immediately adjacent to the place of work. On the facts presented the Court could discern no special risk or unusual, peculiar or greater hazard to the

---

5. This doctrine was announced and reaffirmed in Cudahy Packing Co. of Nebraska v. Parramore (1923) 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 and Bountiful Brick Co. v. Giles (1928) 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, both railroad crossing cases.

employees in turning off the public road "which would not be encountered by the general public in turning off such road or other roads similarly situated." The Court attached no importance to the fact that the left front wheel of the employee's vehicle may have reached the employer's premises since the car was struck and the accident occurred on the public street.

4. Finally, I turn to consideration of Wilkinson v. Industrial Comm. (1970) 23 Utah 2d 428, 464 P.2d 589. After calling in for work, the employee left the employer's plant on his motorcycle, entered the public street and crossed two lanes of traffic to make a left turn. While attempting this crossing, he was struck by a vehicle coming from his left in a southbound lane. Utah's liberal compensation statute, unlike our own, permits recovery if the employee is injured "by accident arising out of *or* in the course of his employment, *wheresoever such injury occurred.*" (Emphasis mine) Plaintiff here admitted that this accident did not occur "in the course of" his employment but contended that it did "arise out of" the employment. The Utah Court disagreed and stated, "The only hazard at all is that type which every person has who enters or leaves a street." Compensation was denied.

Although I recognize that we cannot anticipate and prejudge every factual situation which may in the future be presented, and presumably peculiar circumstances might be shown which would prompt some apparent departure from what I have chosen to call our "public street" rule,[6] I conclude as did the Commission that the traffic accident in the instant case did not oc-

cur in the course of the employment nor did it arise out of the employment. When the plaintiff drove her vehicle into the stream of traffic flowing north on Front Street, she effectively left the zone of employment risks and entered the zone of traffic hazards common to the public traveling on that street. By her own admission petitioner moved forward into Front Street to a point where she could observe oncoming vehicles and then made her decision to enter the line of traffic. Whenever an operator seeks to enter a flow of traffic, whether changing lanes, pulling out from a stopped position at a curb or coming in from an entrance ramp or intersection of streets, there is always present the danger of misjudgment of the space available as well as the danger of negligent operation by another operator. These are risks which every member of the traveling public must anticipate and successfully overcome. These are among the risks which are the daily cause of highway accidents. They were, indeed, singly or in combination, the cause of this accident. They are not in any proper sense peculiar to the employment.

In so saying I am, as noted earlier in this opinion, impressed by the difficulties attendant upon extending the outer limits of the zone of employment hazards into the public street. Supposing that the plaintiff had proceeded a few feet further, completing her entrance into the stream of traffic, and had then been struck from the rear, could it be said that the accident was any less the result of the initial necessity of making a right turn into traffic at the intersection? If not, how far should protection continue? Reverting to the *Grey-*

---

6. For example, there was some colloquy in the instant case with respect to the presence and height of snowbanks along Front Street near the intersection. There was no evidence admitted nor any offer of proof that any of this snow had been pushed into the public street from the employer's premises. I neither intimate nor suggest what conclusion I would reach if under somewhat similar circumstances it were shown that the employer

had caused snow to be pushed into the public way in such manner that it could properly be argued either (1) that a special hazard in the public street originated on the employer's premises, cf. Nelson v. City of St. Paul, supra, or (2) that the employer's business had so encroached into the public way as to enlarge the zone of employment created risk, cf. Barnett v. Britling Cafeteria Co., supra.

*danus* facts, would the employee, in that case, have been protected if, without turning, he had come to a stop preparatory to making a left turn and been struck from the rear? Or further back had suddenly reduced speed preparatory to making such a stop and been struck by a car following too close behind? Or had suddenly changed lanes preparatory to making his left turn and been struck by a car in the lane he entered? Illustrations could easily be multiplied suggesting that once the wall is breached it is difficult to contain the flood. The outer line of protection must be drawn somewhere and I see no advantage in substituting illogical arbitrary action for a rule which, although itself somewhat arbitrary, has at least the merit of being logical and understandable. I am satisfied that it has been and can be applied with some degree of consistency by the Commission and the Court, on a case by case basis, producing results which are equitable to both employers and employees. I am not disposed to abandon it in favor of a rule of uncertainty.

I would deny the appeal and allow fees and expenses to the appellant.

POMEROY, Justice (concurring specially):

I concur in the result. I would add only a comment as to the rationale underlying my conclusion that the appeal must be sustained and the case remanded for rehearing. I am prompted to do this because the dissenting opinion appears to me to be set in a framework of facts quite different from those on which my conclusion is based.

Mr. Justice Webber in his dissenting opinion has said that the Commissioner has found that "[the] petitioner was exposed to no greater risk than the public." He then refers to the well-established principle that the evidence and inferences reasonably

to be drawn therefrom must be viewed in the light most favorable to the Commissioner's finding.

He then continues:

"On the evidence presented he could properly conclude that the petitioner left the employer's premises and edged her car into Front Street to a point where she could see oncoming traffic; that based upon the judgment she then made of the speed and distance of approaching vehicles she elected not to stop and wait but rather to seek to enter the stream of traffic ahead of them; and that she was thereafter involved in an accident in the center of the public street."

I agree that the rule is that when the Industrial Accident Commissioner has made a finding of fact, the evidence and inferences reasonably to be drawn therefrom must be viewed in the light most favorable to the Commissioner's finding.

I respectfully disagree, however, with Mr. Justice Webber's conclusion that the Commissioner could properly have made a finding of fact *with respect to what I consider to be the controlling issue in the case.*

As I read the record, the Commissioner interpreted the governing law to be that if the injury occurred in a place which was physically off the premises owned, controlled or provided by the employer, such fact was determinative of the issue whether or not the injury occurred in the course of employment.

In his decree the Commissioner stated as his view of the law of Maine that off-premises accidents to employees are not compensable unless they fall into one of the four exceptions specifically described in Rawson's Case, 126 Me. 563, 140 A. 365 (1928).[1]

I disagree with such interpretation of *law*.

---

1. As pointed out in the opinion by Mr. Justice Weatherbee the exceptions listed in Rawson's Case, supra, were not considered to be exclusive.

I also do not agree, as Mr. Justice Webber suggests, that the Commissioner could properly reach the conclusion of *fact* that the injury occurred at a point in the highway where petitioner could have seen oncoming traffic and she made an intelligent decision to proceed.

The record demonstrates that petitioner's attorney asked this question:

> "Q Did you say that you had just reached the point of where you *could* see when you were hit?

> "A Well—"

The following colloquy then occurred:

Employer's Counsel: "I object to the form of the question."

Commissioner: "No, it is not relevant anyway."

When the petitioner sought to show that the point where the employer's road met the highway was a "dangerous intersection," the Commissioner refused to permit the evidence to be introduced labeling it "purely immaterial."

Obviously, therefore, the Commissioner bottomed his conclusion on the undisputed fact that the accident occurred off the employer's premises.

Because of the Commissioner's evidentiary ruling that whether or not she was *able* to see up the highway was "not relevant anyway," petitioner was precluded from explaining what the true situation was. Consequently, the Commissioner could not properly conclude that she "left the employer's premises and edged her car into Front Street to a point where she could see oncoming traffic and that based upon the judgment she then made of the speed and distance of approaching vehicles she elected not to stop and wait but rather to seek to enter the stream of traffic ahead of her."

I concur in the conclusions reached by the majority of the Court that the appeal must be sustained because I conclude that when a condition exists which makes entrance to and egress from the employer's premises extrahazardous to employees and such hazard is not common to the traveling public, it can be said there is a "special hazard," constituting a recognized exception to the off-premises non-liability rule.[2]

The employee in my view should have been permitted opportunity to demonstrate that such special hazard did exist, if such be the fact, and that the accident, though occurring off the employer's premises, occurred at a point where the hazard created by the employment was still operative and controllingly effective.

Mr. Justice WERNICK authorizes me to say that he joins with me in this concurring opinion.

---

2. "In almost all of the earliest cases, and many of the current cases as well, the element of special hazard needed no stress, since they were typically cases involving railway crossings or rights-of-way. Before the days of the garden-site factory and the industrial park, plants were often located in such a way that the only way to get to them was to pick one's way through switching tracks, sidings, and even main lines. To deny workmen's compensation to employees injured because of the necessity of daily running such a gauntlet struck most courts as out of tune with the broad concept of work-connection.

"Of course, there is no reason why the special-hazard exception should not be applied to special hazards of nonrailroad character." Larson, Law of Workmen's Compensation, § 15.13, and cases cited.